J. TAYLOR ALBERT, Administrator d. b. n. of J. TAYLOR
ALBERT, deceased, and others *vs.* JACOB ALBERT,
and FRANK ALBERT, Executors of A. J. ALBERT,
deceased.

*Gift from Father to Son—Advancement—Trust—Power of
Courts of Equity to Correct oversight in Will—Statute of
Limitations.*

In 1868, A. J. A., Jr., and J. T. A., sons of A. J. A., Sen. formed a
co-partnership in business. The capital was borrowed from their
father, who, as he furnished the money, was credited therewith on
the books of the firm; and who up to 1872 received interest on
the amounts to his credit. In that year by his direction the sum
of $15,000. or one-half of the advances made by him, was credited
to J. T. A. on the firm's books, and the other half to A. J. A.,
Jr., and the credit to A. J. A., Sen. was thereby cancelled to that
extent, and thereafter no interest was paid to the father by the
sons upon this capital of $30,000, and no note or other evidence
of debt was taken by the father from the sons, or from either of
them therefor. In 1882, J. T. A. died intestate, leaving four
infant children, and there then stood to his credit with the firm
the $15,000 capital transferred to him from the account of A. J.
A , Sen. Administration was thereupon granted to A. J. A., Jr.
the surviving partner, who at the instance of A. J. A., Sen.
excluded from the inventory filed, and from the settlement in the
Orphans' Court the $15,000 of capital standing to the credit of
J. T. A., but retained the amount in his business, with directions
from his father to pay five per cent. interest thereon to the chil-
dren of J. T. A., and at the proper time to turn over the prin-
cipal to th em. The business was carried on thereafter by A. J.
A., Jr., who paid to his deceased brother's children five per cent.
interest on $15,000, and carried the latter sum on his books to an
account called "uninvested estate of J. T. A." Thus the mat-
ter stood during the life of A. J. A., Sen., and at the time of his
death in October, 1886. In March, 1886, A. J. A., Sen. made his
will, and by it, among other things, he directed his estate to be
divided into eight equal parts, and one of these eight parts he

Albert, *et al. vs.* Albert, Ex'rs.

gave, coupled with certain trusts, to the four children of his deceased son, J. T. A. By a separate and distinct clause in his will he provided that "whatever may be charged on my books against any of my children or grand-children shall be accounted as a portion of the part or share or portion of my estate coming to such child or grand-child." Upon his books the sum of $18,000 was charged against his deceased son J. T. A., but nothing against any of his grand-children. On a bill filed by the executors of A. J. A., Sen. against the administrator *de bonis non*, and the next-of-kin of J. T. A., and against A. J. A., Jr. seeking a decree requiring A. J. A., Jr. to pay over to the plaintiffs this sum of $15,000, which was claimed by the plaintiffs in one aspect as the property of their testator, and in another as a debt due by J. T. A. in his life-time to his father, A. J. A., Sen., the testator of the plaintiffs, it was HELD :

1st. That when the money was originally advanced by A. J. A., Sen. to his sons, and was entered to his credit on their books, it was undoubtedly a loan, but the whole character of the transaction was changed in 1872, by the transfer of the amount due to the father to the credit of the sons, respectively, to whom he thereby made what, had he died intestate, would have been technical advancements.

2nd. That the facts were inconsistent with the idea that A. J. A., Jr. held the $15,000 transferred to the credit of J. T. A. as the property of his father, impressed with a trust, and show that in 1872, A. J. A., Sen. gave to J. T. A. the sum of $15,000; and he was powerless to revoke that gift either before or after the death of his son.

3rd. That it was entirely within the power of A. J. A., Sen., when he made his will, to have deducted from the one-eighth of his estate bequeathed to his deceased son's children the amount he had previously given to their father; but not having done that, or made any charge against them on his books, however strong the conjecture that his omission to do so was an oversight, it was beyond the power of a Court of equity to remedy it.

4th. That according to the facts disclosed by the record the money belonged to the estate of J. T. A., and not to the estate of his father.

5th. That if the $15,000 was a gift by the father to the son, the former's executors could not recover it from the latter's administrator.

6th. That if the amount was advanced by the father as a part of the son's prospective share of the father's estate, with an intention on the latter's part to abate the son's share to that extent, then the son being dead, and no share having been bequeathed to him, the grand-children were, under the terms of the will, not chargeable with it.

7th. That if it be included in the $18,000 charged against the son on the books of the father, and be not a gift from the father to the son, the debt so charged would be recoverable by the executors from the son's administrator, unless barred by the Statute of Limitations which has been distinctly relied on.

8th. That assuming the claim to be 'of the latter character, the Statute of Limitations was a complete bar to its recovery, the debt, having been created in 1872, and thus existed for ten years before the son died, and for four years thereafter until the death of the father, and fifteen years having elapsed after the Statute first applied before suit was brought.

APPEAL from the Circuit Court of Baltimore City.

The Court below (DENNIS, J.) decreed that the defendant, Augustus J. Albert, Jr., account for and pay to the plaintiffs, Frank Albert and Jacob Albert, executors of Augustus J. Albert, Sr., deceased, the sum of fifteen thousand dollars, mentioned in the proceedings, to be distributed by said executors as part of the estate of said Augustus J. Albert, Sr., deceased, under his will; and that all questions as to interest upon said sum of money, earned, accrued or payable since the death of said Augustus J. Albert, Sr., and as to the distribution of any such interest, and as to all accountings with respect thereto, be reserved for the further order and consideration of the Court; and further that the cross-bill of J. Taylor Albert, administrator *d. b. n.* of J. Taylor Albert, deceased, and of J. Taylor Albert, A. Crawford Smith and Dora Smith, his wife, and others against Augustus J. Albert, Jr., and Frank Albert and Jacob Albert, executors of Augustus J. Albert, Sr., filed on the 11th day of December, 1890, be dismissed; and that the costs be paid

out of the said fund. From this decree the present appeal was taken. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., BRYAN, FOWLER, and McSHERRY, J.

\* *A. Crawford Smith,* and *John Prentiss Poe,* for the appellants.

*Arthur W. Machen,* and *Charles Marshall,* for the appellees.

McSHERRY, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by Jacob Albert and Frank Albert, executors of Augustus J. Albert, deceased, against the administrator *de bonis non* and the next-of-kin of J. Taylor Albert, deceased, and against Augustus J. Albert, who was formerly a partner of J. Taylor Albert. The relief sought was a decree requiring A. J. Albert to pay over to the plaintiffs the sum of fifteen thousand dollars, which is claimed by the executors in one aspect as the property of their testator, and in another as a debt due by J. Taylor Albert in his life-time to his father, Augustus J. Albert, Sr. These alternative claims are resisted by the four children of J. Taylor Albert, who, together with the administrator *de bonis non* of their deceased father, have filed a cross-bill setting up title to the fund in themselves. The fund is confessedly in the hands of A. J. Albert, and the question is, to whom is the money payable?

In 1868 A. J. Albert, Jr. and J. Taylor Albert, sons of Augustus J. Albert, Sr., formed a co-partnership in business. The capital was borrowed from their father who, as he furnished the money, was credited therewith

\* Did not participate in the argument, though present.

on the books of the firm, and who, up to 1872, received interest on the amounts to his credit.    In that year, by his direction, the sum of fifteen thousand dollars, or one-half of the advances made by him, was credited to J. Taylor Albert on the firm's books, and the other half to A. J. Albert, Jr., and the credit to Augustus J. Albert, Sr., was thereby cancelled to that extent, and thereafter no interest was paid to the father by the sons upon this capital of thirty thousand dollars, and no note or other evidence of debt was taken by the father from the sons, or from either of them, therefor.    Losses in business swept away nearly the whole of this capital, but subsequently success restored it.    In 1882 J. Taylor Albert, died intestate, leaving four infant children, and there then stood to his credit with the firm the fifteen thousand dollars capital transferred to him from the account of Augustus J. Albert, Sr., as just stated, and some two thousand dollars of profits.    Administration was thereupon granted to A. J. Albert, Jr., the surviving partner who, at the instance of Augustus J. Albert, Sr., excluded from the inventory filed and from the settlement made in the Orphans' Court, the fifteen thousand dollars of capital standing to the credit of J. Taylor Albert, but retained the amount in his business, with directions from his father to pay five per cent. interest thereon to the children of J. Taylor Albert, and at the proper time to turn over the principal to them.    The business was carried on thereafter by A. J. Albert, Jr., who paid to his deceased brother's children five per cent. interest on the fifteen thousand dollars, and carried the latter sum on his books to an account called "uninvested estate of J. Taylor Albert."    Thus the matter stood during the life of Augustus J. Albert, Sr., and at the time of his death in October, 1886.    In March, 1886, Augustus J. Albert, Sr., made his will, and by it among other things, he directed his estate to be divided into eight equal parts and

one of these eight parts he gave, coupled with certain trusts (not necessary to be recited) to the four children of his deceased son, J. Taylor Albert. By a separate and distinct clause of his will he provided that "whatever may be charged on my books against any of my children or grand-children shall be accounted as a portion of the part or share, or portion of my estate coming to such child or grandchild." Upon his books the sum of eighteen thousand dollars was charged against his deceased son J. Taylor Albert, but nothing against any of his grand-children. On December 31st, 1886, A. J. Albert, Jr., still having in his hands the fifteen thousand dollars of J. Taylor Albert's "uninvested estate," proceeded to apportion and divide the same on his books between the four children of his deceased brother; opened an account with each of them, and carried to the credit of each, one-fourth of this sum of fifteen thousand dollars. He subsequently rendered them statements showing these sums to their credit, and in 1889 took into partnership his nephew, one of the sons of his deceased brother. That nephew's contribution to the capital was paid by the credit standing in his name on his uncle's books, and that credit embraced one-fourth of this identical fifteen thousand dollars. A. J. Albert, Jr., voluntarily relinquished his trust as one of his father's executors, and also resigned as administrator of his deceased brother, and J. Taylor Albert—son of J. Taylor Albert, deceased—was duly appointed administrator *de bonis non* of his deceased father's estate.

These are the leading facts and upon them it is insisted: First. That A. J. Albert, Jr., as administrator of J. Taylor Albert, paid in 1882 to A. J. Albert, Sr., the fifteen thousand dollars credited in 1872 by the latter's direction to J. Taylor Albert on the books of the firm, or that A. J. Albert, Sr., in 1882 resumed control and ownership of the fund, and thereupon suffered it to re-

main as his property, in the business with a trust im-
pressed upon it; that the trust impressed upon it was
that A. J. Albert, Jr., should pay five per cent. interest
on it to J. Taylor Albert's children, and at the proper
time turn the principal over to them; but that A. J. Al-
bert, Sr. having died without designating such a time,
the fund remained his and became a part of his estate.
Secondly. If this view be not supported, that then there
is a debt due by the estate of J. Taylor Albert to the
estate of his father, and this sum of fifteen thousand dol-
lars, being treated as an asset of the former, is liable for
the payment of that debt.

When the money was originally furnished by the elder
Mr. Albert to his sons and was entered to his credit on
their books, it was undoubtedly a loan upon which in-
terest was charged and paid, and which could have been
demanded and payment of it enforced by the creditor,
but the whole character of the transaction was changed
in 1872 by the transfer of the amount due to the father
to the credit of the sons respectively, to whom he thereby
made what, had he died intestate, would have been
technical advancements. All doubt as to the correct-
ness of this conclusion is removed when it is remembered
that subsequent aid extended to them by him was in the
shape of loans and endorsements, and that the loans were
afterwards repaid to him with interest. The father took
and the sons gave, after 1872, no obligation to indicate
that he considered or that they understood the capital of
fifteen thousand dollars credited to each to be debts due
by them to him. For the ten years thereafter that J.
Taylor Albert lived, there is nothing to show that when A.
J. Albert, Sr., released the firm from its indebtedness of
thirty thousand dollars to himself by the extinguishment
of the credit he held, he regarded his sons individually
debtors each for one-half of the same liability. The books
of A. J. Albert, Sr., have not been put in evidence, and

it does not, therefore, appear whether the charge of eighteen thousand dollars against J. Taylor Albert embraces this fifteen thousand dollars or not. There is nothing to indicate that after 1872 and up to 1882 the father treated the son as a debtor for this fifteen thousand dollars. What transpired between A. J. Albert, Sr., and A. J. Albert, Jr., after the death of J. Taylor Albert in 1882 can in no way affect the question or alter the rights which J. Taylor Albert had acquired in 1872. It is true, the elder Mr. Albert objected in 1882 to the fifteen thousand dollars being withdrawn from the business and administered on in the Orphans' Court; but nothing that he did or said then can operate to revoke or modify the gift he made ten years before. He preferred no claim as a creditor of his son, but the surviving partner and administrator of J. Taylor Albert credited this very fifteen thousand dollars to an account which he opened with the "uninvested estate of J. Taylor Albert"—a proceeding utterly irreconcilable with the theory that the money belonged to A. J. Albert, Sr. And so this credit stood when the elder Mr. Albert made his will, and so it stood for the remainder of his life. When A. J. Albert, Sr., directed A. J. Albert, Jr., to keep the money in the latter's business, he expressly instructed him to turn it over to the children of J. Taylor Albert at the proper time. This was not a direction to divide his own money among his grand-children, for every act that he did from 1872 respecting it indicates that he had from that time ceased to regard it as his own. But having required A. J. Albert, Jr., to withhold it from being administered he merely instructed him to dispose of it as it ought to have been, and but for his intervention would have been, distributed in the Orphans' Court upon the death of J. Taylor Albert. In accordance with that direction, A. J. Albert, Jr., after his father's death, did make a division of the fund among

J. Taylor Albert's children, an act he certainly could not and would not have done had he then believed the money to be the property of his father's estate, of which estate he was at that very time one of the executors. Eighteen months before A. J. Albert, Jr., resigned as one of the executors of his father's estate, he wrote a letter setting forth his understanding of the transaction of 1872, and among other things stated therein said: "He (A. J. Albert, Sr.,) told me to retain the fifteen thousand dollars for the benefit of Taylor's children, that I must pay them interest, and at the proper time I should turn the principal over to them. *   *   *   *   There has never been a doubt in my mind, or I think in that of any one to whom father ever talked of his affairs, but that he intended this as an advancement to Taylor's children, and was to be deducted from their shares, not the fifteen thousand dollars but the total amount charged against their father, in all eighteen thousand dollars. As also in the case of Fannie Winchester it was an oversight in drawing the will. The grand-children were undoubtedly to be responsible for the charges against their respective fathers, just the same as I was to be held for my advancement of eighteen thousand dollars." All this is hopelessly inconsistent with the idea that A. J. Albert, Jr., held the fifteen thousand dollars as the property of his father, impressed with a trust, and not as the property of J. Taylor Albert. From all these circumstances and the manifest understanding of all the parties as far as it is disclosed by the record, we conclude that in 1872 A. J. Albert, Sr., gave to J. Taylor Albert the sum of fifteen thousand dollars, and that he was powerless to revoke that gift either before or after the death of his son.

It was entirely within the power of A. J. Albert, Sr., when he made his will, to have deducted from the one-eighth of his estate bequeathed to his deceased son's

children the amount he had previously given to their father, but he has not done so, nor do we know from the face of his will that he intended to do so. If such was his intention, then, as in the case of Mrs. Winchester and Mrs. Gilmor, his failure to express that intention was an oversight. He knew perfectly well that he had told A. J. Albert, Jr., the sum of fifteen thousand dollars was to be retained for the benefit of J. Taylor Albert's children, and when he made his will, three and a half years afterwards, he could, had he so desired, have diminished their share by subtracting that amount. But he neither did that in his will, nor did he make any charge against them on his books. However strong may be the conjecture that it was an oversight—though we intimate no opinion that it was—it is beyond the power of a Court of equity to remedy it. According to the facts disclosed by the record the money belongs to the estate of J. Taylor Albert and not to the estate of his father.

If the fifteen thousand dollars was a gift by the father to the son, the former's executors cannot recover it from the latter's administrator. If the amount was advanced by the father as a part of the son's prospective share of the father's estate, with an intention on the latter's part to abate the son's share to that extent, then, the son being dead and no share having been bequeathed to him, the grand-children are under the terms of the will, not chargeable with it. If, finally, it be included in the $18,000 charged against the son on the books of the father, and be not a gift from the father to the son, then the debt so charged would be recoverable by the executors from the son's administrator, unless barred by the Statute of Limitations, which has been distinctly relied on. Assuming the claim to be of this latter character, we think the Statute of Limitations a complete bar to its recovery. If a debt at all it was created in 1872.

It existed for ten years before the son died. It had, when he died, been barred for seven years. After the son's death it ran for four years, till the father died, and then for four years more, till the bill of complaint was filed. Fifteen years elapsed after the Statute first applied before suit was brought, and during all that time there appears to have been no demand for payment, and no promise or recognition of the debt sufficient to remove the bar.

As we have reached a conclusion different from that announced by the learned Judge who decided this case in the Court below, we must reverse his decree, and remand the cause that a decree may be passed distributing the fund to the children of J. Taylor Albert, deceased. It will not be necessary to send the fund into the Orphans' Court, but the Circuit Court may properly make distribution of it without further delay. The costs to be paid by the appellees out of the estate of their testator.

*Decree reversed, and*
*cause remanded.*

(Decided 18th June, 1891.)