## EUGENE J. HOWARD

*vs.*

### JAMES M. HOBBS ET AL., ADMINISTRATORS.

*Gifts: inter vivos; payment of interest to donor for life; secured by mortgage. Mortgage satisfied, but not released.*

To make a gift *inter vivos* perfect and complete, there must be an actual transfer of all right and dominion over the thing given by the donor, and an acceptance by the donee, or some competent person for him; and it is essential to the validity of such gift that it should go into effect at once and completely; if it has reference to a future time when it is to operate as a transfer, it is but a promise without consideration, and can not be enforced either at law or in equity.                p. 640

The mere fact that the donor reserves an income for life from the thing given, or requires the donee to pay, and secure the payment of, interest to him for life, on the sum given, is not sufficient to defeat it as a gift.                p. 641

A donor had the donee execute, in the usual form, a mortgage of a piece of property, to secure the repayment, in five years from date, of the sum of $1,000, which the mortgage recited had been loaned to the mortgagor by the mortgagee, with interest, etc. By a separate agreement between the parties to the mortgage, they declared that upon the death of the mortgagee the said mortgage should be deemed paid and satisfied, and that the representatives should execute a good and sufficient release therefor, without repayment of the principal and interest; provided the mortgagor paid the interest, etc.; the mortgage was not paid at the end of the five years, and the mortgagee instituted foreclosure proceedings; the mortgagors obtained a preliminary injunction to restrain the sale; before the sale, the mortgagee died; her administrators were made parties, and moved to dissolve the injunction; on appeal from an order of

dissolution, it was: *Held,* that from all the evidence in the case, the transaction was really a gift for a good and valuable consideration, and the mortgagee being dead, the mortgage should be considered satisfied or extinguished.          p. 648

The mere fact that an instrument is in the form of a loan does not necessarily make it conclusive. Courts will inquire into the facts, and see what was intended, and not be governed simply by the form of an instrument, when, under the rules of evidence, that can properly be done.          p. 641

When a mortgage is satisfied, without default, it becomes inoperative and void, and the legal estate reverts to and becomes vested in the mortgagor, without any reconveyance or release.

p. 645

*Decided April 9th, 1915.*

Appeal from the Circuit Court for Howard County. (In Equity.) (FORSYTHE, JR., J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Albert C. Ritchie* and *Joseph L. Donovan,* for the appellant.

*Edward M. Hammond,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant filed a bill in equity to enjoin Martha C. Jones and William Haydon from selling or offering for sale his property which had been advertised by said Haydon as assignee, under a power contained in a mortgage from the appellant and wife to Mrs. Jones. She having died, after a preliminary injunction had been granted, her administrators were made parties. Testimony on the motion to dissolve the injunction was taken in open Court, and after a hearing the injunction was dissolved and the bill dismissed. From the decree so ordering, this appeal was taken.

The appellant and his wife executed a mortgage to Mrs. Jones which recites that the mortgagors "borrowed" from the mortgagee the sum of one thousand dollars, for which they had executed and delivered to her their joint promissory note, payable to the order of the mortgagee five years after date, with interest payable semi-annually. The mortgage contained the usual provisions, but had in it this recital: "It being a condition precedent, however, to the granting of this loan that so long as said mortgagors shall retain the title to the land hereinafter mortgaged and there be no default in the covenants herein contained, the principal sum shall not be demanded by the mortgagee, or her personal representatives, and that in the event of the death of said mortgagee before maturity of this mortgage, or any renewal thereof, the principal sum so loaned shall be deemed a gift *causa mortis,* and the personal representatives of said mortgagee shall thereupon execute a release of the same without consideration."

The mortgage is dated December 31st, 1906, and the parties entered into an agreement under seal which is dated December 29th, 1906, and, omitting the beginning and conclusion, is as follows:

"Whereas the said Martha C. Jones is the aunt of the said parties of the second part, and has loaned them the sum of one thousand dollars ($1,000.00), secured by a mortgage on property of the said parties of the second part, situated in Howard County; and whereas it was a condition precedent to the granting of said loan that so long as the said mortgagors retain title to said property, they shall pay to the said Martha C. Jones, during her lifetime, in semi-annual instalments, the interest on said loan at the rate of five per cent. per annum, and that upon the death of the said Martha C. Jones, the said mortgage should be deemed paid and satisfied, and her personal representatives directed to execute a good and proper release and satisfaction of the said mortgage without payment of principal or interest.

"Now, Therefore, This Agreement Witnesseth, That, in consideration of the premises, natural love and affection, and other good and valuable considerations, the parties above mentioned do hereby covenant and agree with each other, as follows, to wit:

"The said parties of the second part agree to pay to the said Martha C. Jones, during her lifetime, the interest of five per cent. per annum on said mortgage of One thousand dollars in semi-annual instalments, accounting from the thirty-first day of December, 1906, and in the event of the sale of said property or the disposal of the same in any manner during the lifetime of the said Martha C. Jones, they will pay the principal sum of One thousand dollars and perform all the covenants contained in said mortgage.

"The said Martha C. Jones hereby covenants and agrees with the parties of the second part that if the said Eugene Howard and Lillie G. Howard, his wife, shall pay the interest of 5% per annum on One thousand dollars in semi-annual instalments for and during the term of her life, from and immediately after her death, all claim to the principal of One thousand dollars shall be abandoned and become the property of the said Eugene Howard and Lillie G. Howard, his wife, and the personal representatives and assigns of the said Martha C. Jones are hereby empowered, authorized and directed in such event, to execute a good and sufficient satisfaction and release of said mortgage, without the payment of the principal or any part thereof.

"And the said Martha C. Jones hereby retains her right to said principal sum and the interest thereon in case of default in said mortgage and the terms of this agreement."

Mr. Penrose, the attorney who prepared the papers, testified that he could not explain why the agreement was dated prior to the mortgage, but that it was his impression that they were executed simultaneously. The theory of the bill is that

the thousand dollars was a gift, and it is alleged that the plaintiff had no need for a loan or advancement at the time of the payment of said sum to him, and he would not have accepted it "unless it was to be recognized as a gift to him pure and simple as shown by the agreement filed herein." The answer denies that it was a gift, and alleges that it was a loan. It is conceded by the appellant that it was not a gift *causa mortis,* but he contends, (1) that the transaction constituted a contract, whereby Mrs. Jones agreed that the thousand dollars should belong absolutely to the Howards, in consideration of their paying her five per cent. interest on the amount during her life time, and of their other undertakings as set forth in the mortgage and agreement, which he alleges they have fully performed; or (2) that if the transaction was not a contract, then it constituted a present gift *inter vivos* from Mrs. Jones to the Howards, accompanied by delivery, but subject to defeasance if the Howards did not perform certain conditions, to secure the performance of which the mortgage was given; and these conditions having now been fully performed the gift has been freed of them.

There have been so many decisions in this State, as well as elsewhere, as to whether there had been a perfected gift *inter vivos* under the facts of the respective cases, that we will only restate the general principles applicable to the subject, as stated by JUDGE ALVEY in *Taylor* v. *Henry,* 48 Md. 550 : "To make such gift perfect and complete, there must be an actual transfer of all right and dominion over the thing given by the donor, and an acceptance by the donee, or some competent person for him; and it is essential, to the validity of such gift, that it should go into effect, that is, transfer the property, at once and completely; for if it has reference to a future time when it is to operate as a transfer, it is but a promise without consideration, and cannot be enforced, either at law or in equity. Until the gift is thus made perfect, a *locus penitentiae* remains, and the owner may make any other disposition of the property that he may think proper."

In such a case as is now before us, the main question to be
determined generally is whether the money advanced was in-
tended as a loan or a gift.  The mere fact that an instru-
ment is in the form of a loan does not necessarily make it
conclusive.  As is shown by the late case of *Koogle* v. *Cline,*
110 Md. 587, the Court will inquire into the facts to see
what was intended, and not be governed simply by the form
of an instrument, when under the rules of evidence that can
properly be done.  The mere fact that a donor reserves such
rights as an income for life from the thing given, or requires
the donee to pay, and secure the payment of, interest to him
for life on a sum given, is not sufficient to defeat it as a
gift.  In 14 *Am. & Eng. Ency. of Law* 1044, in discussing
"Conditional or qualified gifts," it is said: "A reservation
by the donor of certain proprietary rights in the subject of
the gift, such as the use and enjoyment thereof, is not neces-
sarily inconsistent with the absolute character of the gift, and
gifts accompanied by such reservations have been repeatedly
upheld" and many cases are cited in the notes.  One of them
is that of *Hope* v. *Hutchins,* 9 G. & J. 77.  In that case
Hannah Hope executed and delivered to Thomas Hutchins
a bill of sale "of a negro girl, named Betty, two cows, and all
the household furniture of which she, the said Hannah, may
be possessed of at the time of her decease—provided the said
Hannah Hope shall not be debarred or prevented (from)
holding, using and enjoying the said property above as afore-
mentioned, and all profits arising therefrom during her
natural life."  A replevin was brought by Thomas Hutchins
against the administrator of Hannah Hope for four negroes
born after the execution of the bill of sale, and during the
life time of Hannah Hope.  Betty and her children re-
mained in the possession of Hannah Hope to the time of her
death.  It was held that the legal estate in negro Betty passed
to the grantee at the time of the execution of the deed, and
that the reservation in favor of the grantor only operated as
a covenant to permit the grantor to use Betty and her chil-
dren (the profits) if she pleased to do so.  The Court said:

"It was obviously her design to make a beneficial provision for her daughter, who was the wife of the grantee, reserving to herself, at the same time, the use of the property and its profits, for her life only, in case her necessities should require it." Of course it will be observed that in that case there was no question about the delivery, as a bill of sale was executed and recorded. But it was a gift in consideration of love and affection and the property was retained in possession by the donor. It shows that the reservation of such rights in the donor did not qualify the absolute character of the grant, except to enable the donor to use either the property granted or its increase during her life.

The mortgage and agreement in this case were executed simultaneously, and although for some unexplained reason the agreement was dated two days before the mortgage, it in point of fact refers to the mortgage as already given—stating that Mrs. Jones *"has loaned* them the sum of one thousand dollars ($1,000) *secured by a mortgage,"* etc. The evidence shows that Mrs. Jones first went to the appellant's home in Howard County in 1904, and remained there from three to four months every summer until 1911, when she and her nurse spent six months there. In 1906 Mrs. Jones told Mrs. Howard, the wife of appellant and a niece of Mrs. Jones, "that she would only be here a couple of years and she had not paid us anything for coming to our place. My wife told her that we did not ask her for anything, and she said that she wanted to fix up about this money this year." Several days afterwards appellant received a letter from Mr. Penrose, attorney for Mrs. Jones, who lived in Baltimore, stating that Mrs. Jones had asked him to prepare the papers for a loan of one thousand dollars, and she said her understanding was that the loan was to be made and he was to pay interest at the rate of six per centum per annum during her life, and at her death the loan was to be cancelled and the money to become his absolutely, and added: "As the mortgage must necessarily be for some time, I suggested that it be for five years, and the interest payable semi-annually. An agree-

ment can be drawn, signed by both of you, that at the expiration of five years it will be renewed for another term, and so on during Mrs. Jones' life." That letter was dated October 25, 1906, and was apparently just after Mrs. Jones had returned to the city from appellant's home, where she spent the summer. Again on November 28th, 1906, Mr. Penrose wrote to the appellant: "I will prepare the agreement of Mrs. Jones relative to the mortgage you have executed to secure her investment of $1,000 during her life." That letter would indicate that the mortgage was already executed on November 28th, but it is dated and was executed December 31st, 1906, according to the copy in the record. It bears five per cent. instead of six per cent. interest, as stated in the letter. Several matters remain unexplained, but Mr. Penrose testified that "his letter of October 25th, 1906, to Mr. Howard expressed the intention of the parties, but that some change was made, because he advised Mrs. Jones not to part with control of her money in her life, but for her to keep control over it, because people sometimes forgot their understandings and obligations, and that she had better keep control of it; but Mr. Howard was not advised of this, and that the provisions in the mortgage that the money was not to be called in so long as Mr. Howard paid the interest expressed the intention of the parties at the time, in so far as it went, but it went further." He also testified that, "She said she wanted a mortgage made out for it, but that it was practically a gift."

It would perhaps have simplified matters if the recital in the mortgage had been in accordance with the terms of the agreement, and of course the agreement should have been accurately stated, if referred to at all. At the time the attorney evidently had in mind a renewal of the mortgage, as shown by his letter of October 25, 1906, but that is not in the written agreement. As the mortgage was drawn, Mrs. Jones undoubtedly surrendered all control and dominion over the fund, and had no power to demand it, if the mortgagors paid the interest and performed the covenants, unless she

lived beyond the five years when the mortgage matured, or a renewal of it. Of course, it would not have been "a gift *causa mortis*" in the event of her death before maturity, but this misnomer can not affect the question. But the agreement executed as aforesaid expressly says that "it was a condition precedent to the granting of said loan that so long as the said mortgagors retain title to said property, they shall pay to the said Martha C. Jones, during her life time, in semi-annual instalments, the interest on said loan at the rate of five per cent per annum, and that upon the death of the said Martha C. Jones the said mortgage should be deemed paid and satisfied," etc. The respective parties then "in consideration of the premises, natural love and affection, and other good and valuable considerations" covenant with each other as shown by the agreement. There can be no doubt that the agreement must be considered in this case—indeed we do not understand that to be questioned, and it was admitted in evidence without objection. That being so, can there be any serious difficulty about the case? Let us treat it as it is called, and from the face of the mortgage presumably was—as a loan, can there be any doubt under the evidence that Mrs. Jones surrendered all control and dominion over that loan? She could undoubtedly have executed a release of the mortgage to take effect at once, and she could as surely have executed a release to take effect at her death—reserving the income during her life. If the Howards retained title to the property, paid the interest as required during her life, and performed all the covenants of the mortgage (all of which they did, so far as the record shows) Mrs. Jones not only had nothing to do at or before her death, in order to complete the gift, but she *could do nothing* to change the situation, without the consent of the Howards. Under those circumstances she had no more control and dominion over the principal than an outside party would have had. If the above facts existed (as they did) then in the language of the mortgage "the principal sum shall not be demanded by the mortgagee, or her personal representatives," or, to follow that

of the agreement, "the said mortgage should be deemed paid
and satisfied," or, as her covenant in the agreement said,
"from and immediately after her death, all claim to the prin-
cipal of one thousand dollars shall be abandoned and become
the property of the Howards."

The one thousand dollars had been delivered to the How-
ards in 1906, when the transaction took place, and there was,
as we have just seen, absolutely nothing to be done by Mrs.
Jones to perfect the gift. It is true that provision is made
for the release of the mortgage by the administrators, and
it is their duty to release it, but the failure to do that can
not give the mortgage life, or give the administrators any
right to enforce it. When a mortgage is satisfied, without
default, it becomes inoperative and void, and the legal estate
reverts to and becomes vested in the mortgagor without any
reconveyance or release. *Brown* v. *Stewart,* 56 Md. 421.
If it be said there was a default in the mortgage, by reason
of its not being paid within five years, our answer is that
under the agreement there was not any default, and it would
be treated, as between the parties, as if there had been a
renewal, but at any rate if it is satisfied, or in some way
extinguished; that can be shown even without a release,
*Berry* v. *Derwart,* 55 Md. 73, and an unreleased mortgage,
which has been paid can not be set up against the mortgagor
or those claiming under him, *Paxon* v. *Paul,* 3 H. & McH.,
399.

Where a gift is fully executed at the time by a complete
relinquishment by the donor of all his rights in the thing
given, the fact that it is not to become effective until after
the donor's death does not render it void as being of a testa-
mentary character. 14 *Am. & Eng. Ency. of Law,* 1016. In
this case it is apparent that the object was to give the How
ards the thousand dollars, reserving the interest for life to
Mrs. Jones and the mortgage was intended simply to secure
the interest to her and probably to require the Howards to
keep the property so Mrs. Jones could still go there (although
that is not mentioned), but there is nothing in the mortgage

and agreement, when taken together, to indicate that she intended to retain dominion and control over the fund, except to secure her interest in it for life. If she had simply given the thousand dollars without taking a mortgage she might not have felt certain of the interest being paid, and she was evidently not willing to give it to them and let them dispose of the property. The clause in the agreement emphasized by the appellees—that "The said Martha C. Jones hereby retains her right to said principal sum and the interest thereon in case of default in said mortgage, and the terms of this agreement" was simply carrying out that idea. Upon default she could have demanded it, but unless there was default she did not reserve the right to it. In 14 *Am. & Eng. Ency. of Law,* 1031, it is said, "A debt due from the donee to the donor may be made the subject of a gift to the same extent as a debt due from a stranger. Such a gift, when fully consummated by the destruction or surrender of the evidences of the debt or the giving of a receipt, will operate as an extinguishment of the debt, and a subsequent promise by the debtor to pay the debt is not enforceable for want of consideration." In *Linthicum* v. *Linthicum,* 2 Md. Ch. 21, it was held (quoting from the syllabus for convenience): "Upon a bill filed by an obligor, in a sealed note against the executor of the obligee, the note was decreed to be cancelled upon proof that the testator did not intend to exact payment of the money due upon it, but originally intended it as a gift, or afterwards treated it as such, and abandoned it as a debt—although this proof consisted entirely of the parol declarations of the testator, unaccompanied by any other statements, or papers of any description." The Chancellor referred to a number of cases and said: "Cases of this description have no affinity with, and are to be carefully distinguisehd from, purely voluntary contracts, or gifts *inter vivos,* or donations *mortis causa,* which cannot be maintained, if the gift is imperfect. by the retention by the donor of the legal power and dominion over the subject. * * * But the case now under consideration, and all similar cases, are placed upon the ground that

the transaction is exclusively between the creditor and debtor, and in view of all the circumstances that the intention of the creditor is clearly indicated, that the debt should be forgiven and released to the debtor himself. 2 *Story's Equity,* sec. 706(*a*)."

In *Snowden* v. *Reid,* 67 Md. 130, six judges sat. The majority held that the transaction was not a gift of money, but a loan. JUDGES ROBINSON and IRVING dissented from the decision, which reversed the decree below, and JUDGE MILLER filed an opinion in which CHIEF JUDGE ALVEY concurred, in which they said they assented to the decree and to overruling a motion for reargument solely upon the ground that they did not regard the evidence sufficient to establish a gift, and not upon the ground that a creditor can not make a gift to his debtor of the debt due to him by the latter, except by a delivery of the note or other instrument evidencing the debt, or by an assignment or release in writing of the debt itself, as JUDGE BRYAN had held in the opinion which he delivered, in which JUDGE STONE concurred. JUDGE MILLER said that the decision in *Linthicum* v. *Linthicum,* made in 1849, had never been expressly or inferentially overruled in this State. It was only questioned in *Snowden* v. *Reid* by the opinion of two judges.

In *Albert* v. *Albert,* 74 Md. 526, JUDGE McSHERRY said that when the money was originally furnished by the elder Mr. Albert to his son, it was undoubtedly a loan, but the whole character of the transaction was changed in 1872 by the transfer of the amount due to the father to the credit of the son. The Court concluded, from all the circumstances and the understanding of the parties, that A. J. Albert, Sr., gave to J. Taylor Albert the sum of $15,000 in controversy, "and that he was powerless to revoke that gift either before or after the death of his son." In the note to *Pennington* v. *Gittings,* 2 G. & J. 208, *Mr. Brantly* refers to a number of cases on "Forgiveness of Debts."

Here we are not dependent upon the declarations of the donor or parole statements, but we have a solemn agreement

under the hands and seals of the respective parties, written by the attorney of the donor. If we treat the transaction as a loan, it does seem that if it is ever possible for a creditor to forgive his debtor the principal of the debt—reserving to himself the income thereon for his life—without actually surrendering the evidence of the debt, it was done in this case. Such rights in the mortgage as were reserved either by the contract or by law to Mrs. Jones would not make the gift void. The covenants entered into in the agreement were in consideration of the premises, natural love and affection, "and other good and valuable considerations," and the other valuable considerations may have been the care and board of Mrs. Jones. The fact is, according to the record, that the Howards kept Mrs. Jones three or four months every summer for eight years without charge, and the sum of a thousand dollars given them, on which they agreed to pay her interest during her life, was a very small compensation for that. It was attempted to be shown that in the year 1911 they did not treat her kindly, but that is not established and hence need not be discussed. The testimony of Mrs. Howard and her physician show ample cause for her not spending more time in the room of Mrs. Jones, under the circumstances. Without further prolonging this opinion, in our judgment the mortgage and note can be held to be satisfied either on the ground that there was a perfected gift of the debt as shown by the agreement, or that there was a contract for a valuable consideration that the loan should be extinguished at the death of Mrs. Jones, if the Howards did all that they covenanted to do.

It follows that the decree must be reversed and the cause remanded. As there is a prayer for general relief, the appellees should not only be enjoined from selling the property, but the mortgage and note should be cancelled.

> *Decree reversed and cause remanded for further*
> *proceedings, in accordance with this opinion,*
> *the appellees to pay the costs out of their de-*
> *cedent's estate.*