## SOPHIA A. KOEHNLEIN *vs.* JOHN H. KOEHNLEIN ET AL.

### *Parent and Child—Accounting—Gifts.*

Certain payments made by a son to his mother, with whom he lived, *held* on the evidence to have been a gift to her, to aid in the support of the family and payment for the home, without any expectation on his part of repayment.        p. 667

A completed gift cannot be revoked.            . p. 667

On an issue between a mother and son as to her indebtedness to him, *held* that expenditures made by him, with her consent, in fitting up an apartment, in her residence, occupied by himself and his wife, should be allowed him, and that he should be charged with rent for such apartment.            p. 668.

*Decided January 14th, 1925.*

Appeal from the Circuit Court for Baltimore County, In Equity (HARLAN, J.).

Bill by Sophia A. Koehnlein against John H. Koehnlein, Helen A. Koehnlein, his wife, and the Real Estate and Improvement Company of Baltimore City. From the decree rendered, plaintiff appeals. Reversed in part.

The cause was argued before PATTISON, ADKINS, OFFUTT, BOND, and PARKE, JJ.

*T. Lyde Mason, Jr.,* with whom was *Henry B. Mann* on the brief, for the appellant.

*Elmer J. Cook,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appellant, Sophia A. Koehnlein, in 1917 purchased a house and lot of ground on Overlea Avenue, Baltimore County, Maryland, at and for the sum of three thousand dollars, and at the time paid in cash thereon the sum of one hundred and forty dollars, and executed a purchase money mortgage on the property to the Orangeville Permanent Building Association for the sum of two thousand eight hundred and sixty dollars. The property after its purchase by her became the home of herself and her four unmarried sons—Henry, Edward, John and George. She was then, and is now, a widow, her husband having died in 1913.

John, one of the appellees, was but nineteen years of age at the time of the purchase of the property, and not only he, but all of the sons, when employed, made weekly contributions to the mother, which were used by her in paying the household expenses and the dues and interest on the mortgage. Her two oldest sons, Henry and George, after the purchase of the property, were, in 1917, drafted in the army and were over-seas until the year 1919. While in the army the sum of twenty-five dollars was sent monthly by each of them to their mother. After their return home they were unemployed for several months, during which time they were unable to give her anything; but when they again obtained employment, they again made contributions to her as before.

George, who is still unmarried, lives with his mother and contributes to the payment of the household expenses. Henry married some months after his return from Europe, but he continued to live with her for a short time thereafter, and while there contributed to the support of the family. Edward, who was only fifteen years of age when his mother purchased the property, is now married and occupies a portion of the house. John, more fortunate than his brothers, has been continuously employed, first, by the Pennsylvania Railroad Company and thereafter by the Baltimore and Ohio Railroad Company, by whom he is now employed. The permanency of his employment enabled him to make his contributions

regularly every month, and while his brothers, Henry and George, were in the army, at a time when the cost of living was extremely high, his responsibilities and burdens in helping to maintain the home were in all probability increased.

With the contributions from her sons, the appellant paid the household expenses, and regularly met the payment of dues and interest on the mortgage until some time in the latter part of the year 1921, when she became apprehensive as to her ability to continue the payment of the dues and interest, because, as she says, all her boys were not then constantly employed. It was then that John volunteered to assist her in the payment of the balance of the indebtedness on the house upon the condition that he be secured in the re-payment of it. This offer was accepted by the mother, and John paid upon the Orangeville Permanent Building Association mortgage, in all, five hundred and seventy-five dollars, five hundred dollars at one time and twenty-five dollars on each of three subsequent occasions. After the payment of these amounts, there still remained due on the mortgage the sum of nine hundred and seventy-five dollars and ninety-five cents. To pay this balance the Real Estate and Improvement Company, one of the appellees, agreed with John to loan one thousand dollars upon the property. But before any mortgage therefor was executed, John had his mother convey to him an undivided half interest in the house and lot, and with the execution of the deed conveying the same, he and his mother executed to the Real Estate and Improvement Company a mortgage upon the property for one thousand dollars to secure the payment of the loan made by it.

John, it seems, had been married in the preceding July, but this fact was not known to his mother at the time of the execution of the mortgage last mentioned, nor did the wife join in the execution of it. But his marriage was afterwards disclosed to his mother, and John, with his wife, after making certain changes in the house, occupied an apartment therein, and thereafter lived separately from the mother and

the rest of the family, and no longer contributed to its support.

It is claimed by the appellant that after the marriage the relationship between John and her became estranged on account of his inconsiderate and wrongful treatment of her, and on June 22nd, 1923, she filed the bill in this case against him and his wife and the Real Estate and Improvement Company, in which she asked, among other things, that the deed from her to John conveying to him a half interest in the property be set aside, as a deed, but that it be declared an equitable mortgage to secure the advancements made by him on account of said property, and that he and his wife be required to convey to her the half interest therein conveyed by her to him upon payment of the amount that the court should find was so advanced by him upon the property together with a proper allowance of interest, less a fair allowance to the plaintiff for rent of the apartment occupied by him and his wife.

The bill, in addition to the facts above stated, alleged that when the offer to pay off the balance of the indebtedness upon the property was made by John and accepted by his mother, she, in all confidence in him, permitted him to decide in what way he should be secured in the re-payment of the money advanced by him under the offer; that, whatever was done, she was of the impression that she was thereby simply giving him security for the five hundred and seventy-five dollars advanced by him and was ignorant of the effect of such deed as claimed by him.

The bill further alleged that the plaintiff was ready and willing to pay to the said John H. Koehnlein any and all sums or advances that he has made on account of said property, as well as to assume the payment of, or, if demanded, to pay off, the mortgage upon the property held by the Real Estate and Improvement Company.

The defendant, John H. Koehnlein, after denying in his answer certain allegations of the bill charging him with improper conduct in the treatment of his mother, and with

wrongful motives in the method adopted by him in securing the re-payment of the money advanced by him, stated that he cheerfully accepted the tender made in the bill, and was ready and willing, "now, or at any time, to accept the payment of any or all funds and advances that he has made on account of said property, the plaintiff to assume said mortgage held by the Real Estate and Improvement Company, and upon payment of the balance due on said mortgage by the plaintiff, and the payment to him of all funds advanced by him on account of said property * * * he and the other defendant, Helen A. Koehnlein, his wife, are ready and willing to execute a deed to the plaintiff for all of their interest in said property."

The court, after hearing evidence upon the bill and answer, held the deed to be, in effect, a mortgage given to secure the advances made by the defendant, John H. Koehnlein, upon the property mentioned, and found the amount so advanced by him to be $1,697.07; and decreed that the plaintiff pay to John H. Koehnlein said sum within sixty days from the date of the decree, and to the Real Estate and Improvement Company the balance due on its mortgage, within that time; and it further decreed that John H. Koehnlein and Helen A. Koehnlein, his wife, at the same time reconvey to Sophia A. Koehnlein their one undivided half interest in the property; and if default were made therein by said John and wife, then their said interest therein was to be conveyed to the plaintiff by the trustees named in the decree; and by the decree the cost of the litigation was to be paid equally by the plaintiff and the defendant, John H. Koehnlein. It is from this decree that Sophia A. Koehnlein has appealed.

There is but one question presented by this appeal and that is, What amount of money did John H. Koehnlein advance upon the property, which, under the agreement between him and his mother, Sophia A. Koehnlein, was to be secured by the deed that was held by the court below to be, in effect, a mortgage?

The defendant claims that the following items should have been allowed him in the amounts secured by the deed or mortgage:

"First—The aggregate amount of weekly or monthly contributions or payments made by him to his mother, as stated above, from 1917 to the time when he ceased to live with her, less the sum, estimated by him, for compensation to her for his board during that time......................$1,470.00

"Second—Amount paid by him upon Orange-ville Permanent Building Association mort-gage .................................... 575.00

"Third—Amount of taxes paid by him upon the property ......................... 142.71

"Fourth—Fire insurance on the property paid by him ............................. 39.50

"Fifth—Fitting up the apartment in the property occupied by him and wife....... 196.00

"Sixth—Fees on $1,000 mortgage paid by him .......................$21.45
Amount paid on principal.........161.74
Interest to April, 1923............ 64.67
                      ———— 247.86

"Seventh—Installation of water............ 12.00

                                    $2,683.07"

Of the above amounts the court allowed the second, third, fourth, sixth and seventh items in full, but disallowed the fifth; and of the first, allowed only the sum of $680. The balance of the last named item, $790, representing the weekly or monthly contributions or payments made by John H. Koehnlein during his infancy, the court disallowed, saying "that any sums that he gave to his mother during his minority (at least without an express promise of re-payment, of which there is no evidence) were hers; and cannot now be charged as a debt due to the defendant." The court disallowed the fifth item, $196, being the amount expended in fitting up the apartment, because, as it said, the sums ex-

pended therefor were "for the personal convenience and comfort of the defendant Koehnlein and his wife, and should not be charged against the plaintiff."

The appellant complains of the allowance to John H. Koehnlein of the amount contributed or paid by him to his mother after reaching the age of twenty-one years and before the aforesaid agreement of the parties, in which John was to be secured in the re-payment to him of the money advanced under that agreement.

As we have said, during the period between 1917, when the property was bought by the mother, and the year 1921, when the said agreement was made, not only John, but the other sons, when employed, contributed to a common fund used by the mother in. defraying the expenses of the household, of which he and they were members, and in paying the dues and interest upon the mortgage upon the property, occupied by them as a home.

It was not until four years after the purchase of the home, and after an estrangement between John and his mother, resulting, in part at least, from the method adopted by him in securing the advances made by him under said agreement, was there anything said or done by him indicating an intention on his part to charge his mother for any part of the sums of money that had weekly or monthly passed from him to her. Had it been his intention to charge her therefor he would naturally have kept an account of the money so loaned her. This he admits he did not do, but relies solely upon his memory as to the amounts of money which passed from him to her at the times named by him; and it may here be said that she flatly denies that he gave or paid to her the amounts stated by him. His claim is that a part of the money so paid her, at the times mentioned, was for board and the balance was a loan to her, yet the record fails to show that there was any agreement between them to the effect that it was so paid, or that there was any promise made by the mother to repay him any part of said money.

It is apparent, we think, from the evidence, that all the money paid by him prior to the said agreement, like that paid by the other sons to the mother, was contributed by him for the support of the family and to pay the interest and dues on the mortgage, that the property might be retained by them as a home. That he did not make the payments at such times expecting any part of them to be repaid to him is strongly indicated by the fact that he not only did not keep any account of such payments, but exacted no promise from his mother for the re-payment of said money, and did not suggest that he in some way should be secured in its re-payment; although he was careful to provide, in the only agreement that is shown to have been made with his mother, that she should in some way secure him in the advances made by him under that agreement.

From the evidence in this case we are convinced that there was no agreement between the mother and son that she should repay him any money paid or contributed by him as stated above, prior to the agreement made by them in 1921, or that it was paid by him to her with the expectation that it would be repaid to him. At most it was nothing more than a completed gift, which could not be revoked. 20 *Cyc.,* p. 1212; *Albert* v. *Albert,* 74 Md. 526; *McNulty* v. *Cooper,* 3 G. & J. 214. We therefore think that the sum of $680 of the first item should not have been allowed.

The appellant also complains of the court's refusal to allow her rental for the apartment occupied by John H. Koehnlein.

Not only did the court below disallow John H. Koehnlein the interest on the money paid by him under the agreement, but it likewise refused to allow him money expended by him in fitting up the apartment for which the claim for rent is made. It would seem that if he should have been charged rent for the apartment he should have been allowed the amount charged by him in fitting up the apartment out of which such rent accrued. But not only did the court not allow the defendant, John H. Koehnlein, for such expenditures, but it also refused to allow his claim for interest upon

the amounts paid by him under the agreement. The reason assigned therefore was that these items were offset by the use and occupancy of a portion of the house by such defendant.

It would seem to us that the claim for expenditures for fitting up the apartment, which was done with the consent of the plaintiff, as well as the interest on the true amount paid by him under the agreement, should have been allowed; in which event the plaintiff should have been allowed her claim for the rent of the apartment; but we will not disturb the decision of the court below upon these questions in view of the fact that there is no evidence in the record showing the rental value of the apartment, or that the plaintiff was injured by such action of the court. We will therefore affirm the decree in part and reverse it in part and remand the case that a decree may be passed in comformity with the views herein expressed.

> *Decree affirmed in part and reversed in part and case remanded that a decree may be passed in conformity with this opinion, the appellee, John H. Koehnlein, to pay the costs in this Court.*