LOUIS GOLD *v.* CONRAD WOLF, SR., ET AL.

[No. 23, April Term, 1939.]

*Decided May 17th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLANE, JJ.

*George Farber,* for the appellant.

*Michael Paul Smith* and *M. William Adelson,* with whom was *James D. C. Downes* on the brief, for the appellees.

SHEHAN, J., delivered the opinion of the Court.

Conrad Wolf, Sr., and wife, filed a bill of complaint in the Circuit Court of Baltimore City praying that Louis Gold, the appellant, be enjoined from foreclosing two alleged mortgages from Conrad Wolf and wife, on the grounds that both of said mortgages had been procured by fraud, and that there had been a settlement and discharge of the debts, for which the alleged mortgages had been given, by an accord and satisfaction between the parties in interest, and for the same reasons it was prayed that the appellant be required to release these mortgages of record.

These questions will be considered in their reverse order, for it is obvious that had the parties in interest entered into an accord and satisfaction of the debts recited in the mortgages, but the mortgagee, nevertheless, had declined to release them and threatened foreclosure proceedings, then it is unnecessary to consider the question of how the mortgages were procured.

The appellant, Louis Gold, was engaged in selling used automobiles. Conrad Wolf, Jr., wished to buy an automobile, and he and Gold entered into negotiations which resulted in the purchase of a 1925 Maxwell car to be paid for in weekly installments of five dollars. This occurred in June, 1927, and the appellees, the father and mother of Conrad Wolf, Jr., are alleged to have executed a mortgage for $315 on certain real estate belonging to them, as guarantors of the payment of this debt of their son. It is charged that the execution of this mortgage was fraudulently obtained, in that Gold represented it to be a promissory note and thus procured the mortgagors' signatures. This automobile in a very short time proved to be entirely unsatisfactory, and the parties to the original agreement again entered into negotiations for another car, which resulted in the purchase by Conrad Wolf, Jr., of a "Flint" automobile for $575. Involved in this transaction was the trade of the Maxwell and other adjustments, and an undertaking to pay $250. Gold claims that the payment of this sum was secured by the

elder Wolf and wife by their giving another mortgage to him. It is alleged that this mortgage was also procured by fraud practiced upon these elderly people by Gold in the same manner as that relating to the first mortgages. These alleged frauds are denied by the appellant both in his answer and in his testimony, and no extended consideration of the facts relating thereto is called for, because, in this case, for the reasons above stated, it seems unnecessary to the decision. However, we believe that the facts presented in the record do not sustain the charges of fraud and on that ground these mortgages should not be declared void.

The alleged settlement and discharge of the debts secured by these two mortgages by an accord and satisfaction, between the parties in interest, presents the important and controlling question for our consideration. The facts offered to support this contention, in addition to those above recited, are that the purchaser, Conrad Wolf, Jr., was unable to continue to pay the installments on his indebtedness and offered to return the Flint automobile to the appellant, who accepted it, together with the retention of the fifty-five dollars already paid, in full satisfaction and discharge of the indebtedness and obligations of the appellees and their son. Assurances were given at the time of the return of the "Flint" car, and subsequent thereto, that they, the Wolfs, were fully dicharged from all liability in connection with the purchase of these automobiles. The above facts are sufficient to support the accord and satisfaction. *Brown v. Stewart,* 56 Md. 421, 430; *Howard v. Hobbs,* 125 Md. 636, 94 A. 318; 1 *Amer.Jur.* 244; *Chicora Fertilizer Co. v. Duncan,* 91 Md. 144, 46 A. 347. This accord and satisfaction is said to have been in 1928, and since the appellant directly denies that any such transaction occurred, an examination of the facts and circumstances that lend support to the contentions of the appellees should be carefully made.

Before the time of the return of the Flint automobile it had been completely overhauled, repainted, and put in

good condition. Apparently this was one of the inducements that influenced Gold in accepting the return of the car under the conditions above recited. Gold resold the Flint car twice, without notifying the Wolfs to whom it was sold, first to Charles Wolf, brother of Conrad, and later to John Weinhold. The transaction with Charles Wolf was entirely between Gold and him. The agreement was that Charles would take his brother's place and thus acquire the Flint automobile and pay for it as his brother had undertaken to do. He did so receive it and did make several small payments on it, and used it for a considerable length of time. The automobile was kept on the premises where Charles lived at 206 S. Kresson Street, in Highlandtown, from which place, after Charles had defaulted in payments, Gold took it and sold it to Weinhold. The Wolfs were not notified of these transactions. The sale to Charles took place shortly after the return of the car by Conrad, Jr., who in no way participated in this sale to his brother. The sales contract with Weinhold bears date June 1st, 1929, and in that contract it was "expressly agreed that the legal title to this automobile should be and remain in the Eastern Auto Sales Co. until the full purchase price thereof shall be paid". This sales company was operated by Louis Gold, and this stipulation showed that he or his company had taken over the title to the property, and thus the contention of the appellees and of Conrad Wolf, Jr. finds support. The testimony of Charles Wolf, who was summoned by Gold and called as his witness, supports the contention of the appellees. The most interesting and important of the facts that support the contention of the appellees is that over ten years had elapsed from the return of the Flint automobile by Conrad Wolf, Jr., to Gold, without any effort, on Gold's part, according to the weight of the testimony, to collect this indebtedness, and it is inconceivable that, had these mortgages been outstanding and unpaid or unsatisfied, Gold would have waited this length of time before endeavoring to obtain his money from the elder Wolfs. Not until 1938, when

Gold found that the Wolfs could not go through with a proposed sale of their property, did he assert his claim. It is true that Gold does testify that during the years 1929 and 1930 he spoke to the Wolfs with respect to the payment of this money, but that is denied by the appellees and their son, and the testimony in that respect, to say the least, is inconclusive.

Upon an examination of the title to the Wolf property by Mr. James C. Downes, attorney at law, the two mortgages in question were discovered in the records, unreleased. The proposed purchaser being unwilling to accept the title with these incumbrances, Mr. Downes called upon Louis Gold, and requested him to release them. This Gold declined to do, and offered to place the mortgages in the hands of Mr. Downes for collection, which offer he promptly refused. All the above facts and circumstances strongly support the claim of the appellees. Mr. and Mrs. Wolf claimed that it was not until this examination that they knew the mortgages in question existed, and that Gold claimed the debt had not been satisfied. When Louis Gold claimed that the debt to him was not satisfied and threatened to foreclose the mortgages, this suit was brought to restrain him and require him to release the mortgages of record. The flat contradiction of the testimony of Mr. Downes and Mr. Trail, two disinterested witnesses, who had no apparent reason for testifying falsely, does not aid the appellant in his contentions. The principal difficulty that this case presents is the continuous and positive contradictions found throughout the record, which cannot be reconciled, and the many inconsistencies in the testimony of Louis Gold.

In the record there are numerous incidents showing the difficulty the chancellor had with the manner in which the appellant testified, and the character of the testimony offered by him. On the question of accord and satisfaction with respect to the debts mentioned in these mortgages, the preponderance of the testimony, as offered by the respective parties and its credibility, is de-

cidedly with the appellees. The denial of Louis Gold as to the accord and satisfaction is definite. On the other hand we have the affirmance of both of the elder Wolfs, who seem to be people of respectability and the owners of property, who directly contradict Mr. Gold, and then we have the testimony of the younger Wolf, who made the arrangement for the return of the automobile, under the conditions above recited. These statements also have the support of Evelyn Wolf, the wife of Conrad Wolf, Jr., who, before her marriage, heard Louis Gold tell Conrad Wolf, Jr., that he would take the automobile back and release him and his father and mother from their obligations. These four witnesses testified positively as to what occurred, and their testimony is further supported by various facts and circumstances in the case above detailed. These persons may be said to be interested, but to no greater extent than was Louis Gold. It is difficult to believe that this alleged debt should have existed over a period of ten years without any serious effort to collect it. What bearing the testimony of other witnesses has in the case, seems, on the whole, to support the contentions of the appellees. The chancellor who heard the case, as we have often stated, was in a far better position to judge of the truthfulness of the various witnesses than we are, and for that reason, and for the reasons above stated, we are not disposed to set aside the decree from which his appeal is taken. The decree, therefore, must be affirmed.

*Decree affirmed, with costs to the appellee.*