RETTALIATA *v*. SULLIVAN, EXECUTRIX ET AL.
(Two Appeals in One Record)

[No. 73, October Term, 1955.]

618

*Decided January 11, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Lewin Wethered,* with whom were *Jerome A. Loughran* and *Barroll & Wethered* on the brief, for the appellant.

*William A. Renzi,* with whom was *Malcolm J. Coan* on the brief, for Mary Estelle Sullivan, Executrix.

*Samuel Cooper* for the Service Realty Company, Inc.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order dismissing an amended bill of complaint, after demurrers had been sustained and the complainant declined to further amend. The bill, filed on April 28, 1954, sought to recover $2,000 from the estate of Vincent L. Palmisano or from the Service Realty Company.

It is alleged that the complainant was the owner of a tract of land containing nearly ninety-two acres situated in Howard County along the Baltimore-Washington Boulevard, subject to mortgages originally totalling some $5,600, which had been taken over by Palmisano. In 1945 she failed to keep up interest payments because of financial difficulties. He suggested to her that it would be advisable to sell the property, and procured a purchaser who offered to pay $23,000. Palmisano informed her that he would not charge any commissions to her if the sale were consummated. On February 9, 1946, she executed a contract of sale for $23,000, "of which $2,000 have been paid prior to the signing hereof", balance in sixty days. The down payment was made to Palmisano, presumably because he held the mortgages. The other party to the contract was Morris A. Rome, attorney, his principal being undisclosed. The contract was silent as to commissions.

Shortly thereafter, Miss Rettaliata was sued by the principal, Isador Panitz, and the court decreed specific performance. On October 2, 1947, the Service Realty Company, by Rome and Rome, its attorneys, sued her for commissions on the sale. She employed counsel who filed general issue pleas and the case was removed to another county for trial. This action was still pending when, on December 29, 1948, Palmisano paid the Service Realty Company the commissions it claimed in the sum of $1,150 and on the same date wrote the complainant a letter so stating, enclosing his check for $850, "which is the balance due you on the deposit of $2,000 which I received from the late Mr. Rome". This check was returned by registered mail, demanding payment of the full $2,000. It is alleged that she made repeated efforts to see Palmisano at his office in Baltimore City during 1949 and 1950 but that he was ill and unable to see her. The action for commissions was dismissed by the Service Realty Company in August, 1951. It is alleged that "for some months prior to August, 1951, your oratrix was suffering from a severe heart condition and on account of this condition she was in a highly nervous state and unable to attend personally to any business affairs, and was also unable to talk or discuss any matters with her attorney, until a month prior to April, 1954." Palmisano died in 1953. There are also allegations that "your oratrix feels that a fraud and deceit has been practiced upon her" and that she has no adequate remedy at law. It is alleged that counsel for the complainant were advised by counsel for the estate on November 12, 1953, that the estate admits an indebtedness of $850. It is not alleged that the estate or the other defendant are insolvent.

The prayers of the bill are for a discovery and accounting, for a decree that the defendants "are holding the said sum of $2,000 mentioned in these proceedings as trustee for your oratrix" and that they be required "to pay over unto your oratrix all sums by them or Palmisano, or one of them, due to her account of said receipts"; and for other and further relief. The bill does

not rely on an express trust, but rather upon a constructive trust created by operation of law. Although Palmisano was a lawyer, it is not contended that he was acting as the complainant's lawyer in any of these transactions, and she had counsel of her own at the time of the alleged wrongful payment. The intimation of fraud in the bill is not supported by any allegations of fact. *Edison Realty Co. v. Bauernschub,* 191 Md. 451, 461. There is no claim of concealment. Under the facts alleged it seems clear that the complainant might have brought an action at law against Palmisano for an account or in assumpsit. We may assume, without deciding, that a suit in equity would lie on the same theory, because of the agency relationship. *Nagel v. Todd,* 185 Md. 512, 517. Cf. *Maskell v. Hill,* 189 Md. 327, 337; *Berman v. Leckner,* 188 Md. 321, 328; and *Weaver v. Leiman,* 52 Md. 708, 713. Or an action at law might have been brought against the Service Realty Company for money had and received, or a suit in equity to enforce a constructive trust. *Webb v. Balto. Commercial Bank,* 181 Md. 572, 581. In either case the three-year Statute of Limitations would seem to apply. Code (1951), Art. 57, sec. 1; *Maskell v. Hill, supra; Banking & Trust Co. v. Bender,* 175 Md. 625, 633. The Statute of Limitations is applied in equity by analogy where the remedies are concurrent. *Grandberg v. Bernard,* 184 Md. 608, 611; *Brashears v. Collison,* 207 Md. 339, 352.

It is well settled that a defense of limitations or laches may be raised in equity on demurrer. *Grandberg v. Bernard, supra,* and cases cited. The appellant contends that the defense of limitations was not raised by the demurrers. However, the demurrers not only rely upon laches but contain another paragraph asserting that "the plaintiff has slept on her rights, if any, since December 29, 1948". Moreover, it has been held that equity may refuse relief where the statute applies, even though limitations is not pleaded. *Syester v. Brewer,* 27 Md. 288, 319; *Warburton v. Davis,* 123 Md. 225. And see Note 173 A. L. R. 326, 337.

The claim that Palmisano occupied some sort of a fiduciary relation towards the complainant does not in itself furnish an excuse for the delay. Cf. *Mitchell v. Cassedy,* 200 Md. 339, 345, and *Crawford v. Richards,* 197 Md. 284, 288. Nor does the claim that the complainant was incapacitated by illness. Cf. *McElrath v. McElrath,* 139 N. W. 708 (Minn.). Under Code (1951), Art. 57, sec. 2, the only disabilities that would toll the statute are infancy or lunacy. *Maurice v. Worden,* 52 Md. 283, 295; *Gump v. Sibley,* 79 Md. 165, 169. Moreover, it is apparent from the allegations of the bill that the complainant had counsel when the cause of action arose, and made repeated demands for payment and efforts to see Palmisano for a period of more than two years before her alleged disability arose. Yet she allowed the period of limitations to expire.

But even aside from the question of limitations, we think the defense of laches applies under the facts alleged. "Ordinarily the defense of laches must include not only lapse of time but also some prejudice to the defendant * * *." *Kaufman v. Plitt,* 191 Md. 24, 29. See also *Clarke v. Brunk,* 189 Md. 353, 362; *Stoewer v. Porcelain Etc. Mfg. Co.,* 199 Md. 146, 148; and *Bradley v. Cornwall,* 203 Md. 28, 39. The cases recognize that the death of a material witness may constitute prejudice. *Weber v. Bien,* 143 Md. 561, 567; *Dorsey v. Stone,* 197 Md. 220, 223. In the instant case suit was not brought until nearly six years after the cause of action arose, and after Palmisano had died. Since the other party to the original transaction had died before the alleged misapplication of funds took place, we think there was a sufficient showing of circumstances likely to prejudice the defendants in the presentation of their case.

*Order affirmed, with costs.*