822 A.2d 1226

Lisa VER BRYCKE

v.

J. Russell VER BRYCKE, III, et al.

No. 1953, Sept. Term, 2001.

Court of Special Appeals of Maryland.

March 27, 2003.

Reconsideration Denied June 6, 2003.

**624**

J. Thomas Giunta, (William F. Jones, Annapolis, and Leonard G. Ross, Jr., on the brief), Gaithersburg, for appellant.

Timothy E. Meredith (Warfield, Meredith & Darrah, P.C., on the brief), Severna Park, for appellees.

Argued before DAVIS, ADKINS and SHARER, JJ.

ADKINS, Judge.

In 1992, John R. Ver Brycke, III and Barbara Ver Brycke ("the Ver Bryckes"), appellees/cross-appellants, transferred $200,000 to their son, John R. Ver Brycke, IV ("John"), and his then wife, Lisa May Feehley Ver Brycke ("Lisa"), appellant/cross-appellee. In an effort to establish a sort of "family compound," the Ver Bryckes advanced these funds to help John and Lisa buy a home known as "Rabbit Hill," which is next door to the Ver Bryckes' home on the Severn River. John and Lisa ultimately separated five years later, in August 1997. They divorced in October 2000, never having lived in the Rabbit Hill home.

The Ver Bryckes and Lisa dispute the nature and legal effect of this $200,000 transaction. When Lisa and John sold Rabbit Hill, the Ver Bryckes made a demand for the $200,000

plus interest, which Lisa rejected on the ground that the $200,000 was a gift. A jury in the Circuit Court for Anne Arundel County found by special verdict that the Ver Bryckes had given John and Lisa a conditional gift of $200,000, the condition being that Lisa and John would actually live in the Rabbit Hill home, with their children, and help care for the Ver Bryckes. The jury also found that Lisa and John were unjustly enriched by the transaction, and that they were equitably estopped from retaining the gift. It awarded the Ver Bryckes $200,000 under these theories of recovery.

The jury also found, however, that the Ver Bryckes "were . . . aware that the conditions [of their conditional gift] would not be satisfied on or before January 1, 1995[.]" After the court ordered judgment in favor of the Ver Bryckes for the entire $200,000, Lisa moved for judgment notwithstanding the verdict, arguing that the Ver Bryckes were barred by the statute of limitations from recovering. The trial court denied this motion without a hearing or a written opinion. Both parties appeal the resulting judgment.

Lisa raises the following questions for our review:

I. Did the jury find that the applicable statute of limitations has run, so that the trial court erred in allowing recovery by the Ver Bryckes?

II. Was the jury's finding that the $200,000 was a conditional gift supported by the evidence?

The Ver Bryckes ask us to decide these additional issues:

III. Did the trial court err in failing to force Lisa and John to disgorge profits from the sale of Rabbit Hill when the jury found that the "benefit" constituting the unjust enrichment was merely the $200,000 initial amount?

IV. Were the Ver Bryckes entitled to prejudgment interest as a matter of right?

Because the Ver Bryckes failed to file suit within three years of knowing that Lisa and John would not satisfy the condition that they live at Rabbit Hill, we hold that their claim was partially barred by the statute of limitations. The bar of

the statute is limited, however, to $40,000 of the $200,000 gift, because that amount was unsecured. With respect to the $160,000 balance of the conditional gift that was subject to a deed of trust, the 12 year statute of limitations applied, and the Ver Bryckes' principal claim in this amount was not time-barred. We also hold that the jury's finding that there was a conditional gift is supported by the evidence. Regarding the Ver Bryckes' cross-appeal, we hold that the Ver Bryckes are not entitled to disgorgement of profits or prejudgment interest as a matter of right.

## FACTS AND LEGAL PROCEEDINGS

### Lisa and John's Purchase Of Rabbit Hill

After meeting while both were in the Navy, Lisa and John married in April 1981. In 1986, they moved to Tennessee. In the early 1980's, John noticed the Rabbit Hill property when he made his first visit to his parents' new Annapolis home, which was next door to Rabbit Hill. The resident of Rabbit Hill was an older woman. When she died in 1992, John asked his father to inquire about what was going to happen to the property.

Learning that Rabbit Hill was to be sold, John and Lisa considered buying the property. Lisa explained that they calculated how much money they would be "comfortable spending on a mortgage and still [be] able to keep our kids in a private school, and we came up with ... $350,000," $300,000 of which would be financed. The property, however, had a significantly higher value, in the range of $750,000. In order to make the purchase, John and Lisa needed financial help from other members of the Ver Brycke family.

The property featured both the main house and a two-bedroom guest house. According to John,

> after we figured we knew what the price was going to be then we went into a—I went into a mortgage search mode trying to find the best financing, and we did.... I came up with a figure of 350–for me, 200–for my sister, and 200–for [my parents].

John's sister, Pamela Ver Brycke, agreed to contribute $200,000 toward the purchase, in exchange for the right to purchase the guest house for rental income.[1] The Ver Bryckes agreed to advance John and Lisa the remaining $200,000. It is the parents' $200,000 transfer—or more specifically, the nature of that transaction—that eventually resulted in this litigation.

After their offer was accepted, the Ver Bryckes proceeded to make the financial arrangements necessary to complete the purchase. The Ver Bryckes took out a mortgage on their own home to finance their $200,000 contribution toward the purchase of Rabbit Hill. On August 10, 1992, Mr. Ver Brycke signed a "gift letter" stating:

> I, John R. Ver Brycke III ... will give (or have given) [John Ver Brycke, IV] a gift of $200,000.00 .... and there is no obligation expressed or implied either in the form of cash or future services, to repay this sum at any time. These funds are available and will be given (or have been given) to: John Ver Brycke IV in time to close the mortgage transaction on the purchase of his ... home.

Mr. Ver Brycke also consulted his estate planning attorney. In a September 11, 1992 letter, Ronald Holden summarized the proposed transaction.[2]

> You have asked me to summarize the substance of my recommendations concerning your desire to make a gift of $200,000.00 unto your son and his wife by use of the annual $10,000.00 gifting rule. As you are aware, each of you as individuals is permitted to give up to $10,000.00 per calendar year unto any number of individuals. Thus, each of you may give $10,000.00 per year unto John and $10,000.00 per year unto his wife, Lisa. This represents a total of $40,000.00 per year.

---

1. Although the guest house was offered for sale together with the main house, Pamela Ver Brycke eventually purchased the guest house in a separate settlement.

2. According to Holden, Mr. Ver Brycke did not tell him about the August 10, 1992 gift letter that he had signed.

You expressed the desire that in making the proposed gift/loan gift of $200,000.00 you did not want to use up any of your $600,000.00 unified credit (which is available under Federal Gift Tax Laws). During our meeting, I cautioned that if you were to set up a situation whereby John signed a $200,000 note and religiously, each calendar year, you forgave $40,000.00 of such note, there is a risk that the IRS will take the position that the entire gift of $200,000.00 was made in 1992 versus being made in increments of $40,000.00. I advised that this risk is even greater if your son and his wife did not make the customary interest and principal payment expected in [a]rms length mortgage transactions. You stated that notwithstanding the above potential risk, you would like to proceed to attempt to qualify the gifts as being made in $40,000.00 increments.

Based upon the above objective I have recommended to you the following:

1.) On settlement day, I recommend that each of you write *over your separate signatures* a $10,000.00 check to John and each of you write over *separate* signatures a $10,000.00 check to Lisa. . . .

2.) On settlement day, instruct [settlement agents] Feldman and Bernstein to prepare for you a $160,000.00 mortgage note to be signed by John and Lisa. . . .

3.) In January of 1993 and each subsequent year thereafter, you will plan to forgive $40,000.00 of the debt.

4.) John and Lisa should make regular mortgage payments to you each month, beginning November 1st.

The Rabbit Hill settlement took place on September 30, 1992. The Ver Bryckes followed many of Holden's recommendations. Before the closing date, the Ver Bryckes deposited $160,000 into an escrow account at the title company that was handling the Rabbit Hill transaction. At closing, that money was applied toward the purchase price. The remaining $40,000 that the Ver Bryckes committed toward settlement was delivered at closing. Mr. and Mrs. Ver Brycke each wrote separate $10,000 checks to Lisa and John, totaling $40,000. John and Lisa immediately endorsed these four

checks, and those funds were used to purchase Rabbit Hill.[3] Pamela separately paid for and settled on the guest house. John and Lisa borrowed the remaining $300,000 of the $550,000 purchase price from Norwest Mortgage, Inc. ("Norwest").

In exchange for the $200,000 funding, the Ver Bryckes received promissory notes and a second deed of trust on Rabbit Hill. Instead of drawing a single $160,000 promissory note, as Holden contemplated, the Ver Bryckes had Lisa and John sign sixteen individual promissory notes for $10,000, which were easier to individually cancel on an annual basis. John and Lisa also executed in favor of the Ver Bryckes a second deed of trust, which was junior to Norwest's first deed of trust.[4]

Shortly after settlement, Norwest asked for an acknowledgment that there had been a $200,000 gift to Lisa and John. According to the title company agent who handled the Rabbit Hill settlement, "[t]here was a[n] [August 10, 1992] gift letter saying that there would be a gift, and then [Norwest] wanted an acknowledgment that the gift had in fact been given." Mr. Ver Brycke signed a December 7, 1992 letter to Norwest, in which he "advised that my wife and I have given a gift of $200,000.00 to our son, John R. Verbrycke, IV and daughter-in-law, Lisa May Verbrycke."

### Releases, Refinancing, And Renovation

After settlement, Mr. Ver Brycke related that "John and Lisa started immediately to working on [Rabbit Hill], . . . taking the plaster off the walls and . . . gutting the house, and so they started there and they kept on with that work until

---

3. Lisa testified that both she and John certified at closing in their residential loan application that none of their $10,000 downpayment on Rabbit Hill had been borrowed, even though some of the $200,000 had been used for that purpose.

4. The Ver Bryckes, however, did not follow the usual course of promptly recording their deed of trust. Instead, it was not until nearly four years later, in July 1996, that Mr. Ver Brycke, on his own, recorded that instrument.

the spring." But "no work of any kind" was done to Rabbit Hill in terms of actual remodeling. After it was "gutted," the house was not habitable.

While John and Lisa were working at Rabbit Hill, on January 1, 1993, the Ver Bryckes cancelled four of the $10,000 notes, in accordance with Holden's advice. On January 1, 1994, they again cancelled four more notes. The cancelled notes were placed back into the Ver Bryckes' safe deposit box at Farmer's National Bank with the remaining notes that had not been cancelled.[5]

In 1994, John and Lisa refinanced Rabbit Hill. In doing so, they borrowed an additional $100,000 to fix up that property. Instead, however, they used that money to renovate a summer cottage in Sherwood Forest, which the Ver Bryckes owned, and which Lisa and John had occupied intermittently since their move to Maryland.[6]

When January 1995 arrived, Rabbit Hill was still gutted. The Ver Bryckes did not cancel any of the remaining notes.

### Dissolution, Litigation, And Sale

Lisa and John's marital difficulties eventually led them to separate on August 6, 1997. John initiated divorce proceedings in January 1998.

On March 23, 1999, the Ver Bryckes filed in the Circuit Court for Anne Arundel County a declaratory judgment complaint, naming both Lisa and John as defendants. In this and subsequent amended complaints, the Ver Bryckes alleged that

---

5. Whether the cancelled notes were ever delivered to Lisa and John was disputed. Lisa testified that Mrs. Ver Brycke gave her the eight cancelled notes from 1993 and 1994, but then eventually took them back for safekeeping. Mrs. Ver Brycke testified that the cancelled notes were placed directly into the safe deposit box.

6. Mr. Ver Brycke's father bought the Sherwood Forest cottage in 1927, and then Mr. Ver Brycke bought the cottage from his parents in 1946. At trial, Mr. Ver Brycke testified that he and his wife "didn't want" the renovations to the cottage, and did not consider the renovations to be any sort of gift from Lisa and John. In fact, he related, he and his wife had not spent the night in the cottage since the early 1980's.

they had "advance[d] to Defendants $200,000" at the Rabbit Hill closing, and that there was a dispute regarding the status of the deed of trust and underlying promissory notes executed by Lisa and John at settlement. It was the Ver Bryckes' position that they "never intended to make a completed gift of $200,000 to [Lisa and John] in 1992[,]" and that Lisa and John understood and accepted that the $200,000 was either a loan or a gift conditioned on fulfillment of their promise to live at Rabbit Hill and to care for them as they aged. The Ver Bryckes asserted alternative claims for breach of the deed of trust and notes, unjust enrichment, and promissory estoppel.

In November 1999, while this litigation was pending, Lisa and John contracted to sell Rabbit Hill to a third party for $980,000. On February 23, 2000, a week before the scheduled closing, the Ver Bryckes sent a payoff statement, indicating that the balance due under their notes and deed of trust was $231,197.81. In response, Lisa moved for emergency *ex parte* relief, alleging that Rabbit Hill was encumbered by the deed of trust to the Ver Bryckes, that the parties disputed whether the $200,000 secured by the deed of trust was a loan or a gift, and that the Ver Bryckes would not release the lien of the deed of trust to allow the closing to proceed without payment of $231,000. She requested that the net proceeds of the sale "be placed in the register of the Court until a disposition of the property is made by the domestic Court." The circuit court ordered that all the sale proceeds, other than those necessary to pay off Norwest, be placed into escrow, and that the lien of the deed of trust "be transferred to and be a lien against the Escrow Fund." Lisa and John settled on March 1, 2000, and $547,224.54 was escrowed pursuant to the court order.

The Ver Bryckes also had their attorney send John and Lisa an acceleration notice, dated November 22, 2000, demanding a payoff of $231,197. John and Lisa made no payments to the Ver Bryckes under the notes, either before or after receiving the acceleration notice.[7]

---

7. Lisa and John did pay back $25,000 in closing costs and associated fees from the 1992 settlement. Lisa testified that the $25,000 was a

In their second amended complaint, the Ver Bryckes asked the court to "adjudge and declare the respective rights and obligations of the parties" regarding the $200,000 deed of trust and the notes. They prayed judgment that covered not only the $200,000, but also a "pro rata share" of the significant profit from the sale of Rabbit Hill, and requested that they be paid from the escrowed Rabbit Hill funds.

John did not contest the positions taken by his parents. Lisa, however, asserted a number of defenses, including that the $200,000 was an unconditional gift and that the Ver Bryckes were barred from recovering by the statute of limitations. She also counterclaimed against the Ver Bryckes and cross-claimed against John for fraud in the inducement, constructive fraud, unjust enrichment, promissory estoppel, and civil conspiracy.

## Trial

After a trial on the merits, the jury returned special verdicts in favor of the Ver Bryckes. The jury rejected Lisa's contention that the Ver Bryckes made an unconditional $200,000 gift. They also rejected the Ver Bryckes' claim that the $200,000 was a loan. Instead, the jury agreed with the Ver Bryckes that the $200,000 was a conditional gift to Lisa and John. The jury concluded that the elements of unjust enrichment and promissory estoppel were present, and found that the Ver Bryckes were entitled to $200,000 under each theory. The jury also found, however, that the Ver Bryckes were "aware that the conditions would not be satisfied on or before January 1, 1995[.]" Without giving any effect to this "knowledge" finding, the trial court ordered judgment in favor of the Ver Bryckes for the entire $200,000.

Lisa moved for judgment notwithstanding the verdict (JNOV), asserting that the jury's finding that the Ver Bryckes knew by January 1, 1995 that the conditions of their conditional gift would not be satisfied barred their entire recovery

---

loan, and Mrs. Ver Brycke asked her and John to pay it back, which they did in 1994.

under the three year statute of limitations governing civil actions at law. The trial court denied Lisa's motion without a hearing, explanation, or mention of the statute of limitations. It ordered judgment in favor of the Ver Bryckes and directed the escrow agent to pay the Ver Bryckes $200,000, with post-judgment interest of 10 percent per annum.

The Ver Bryckes then moved to alter, amend, or revise the judgment, or for JNOV. They asserted that (a) they were entitled to a percentage of the profits from the sale of Rabbit Hill despite the jury's finding that the amount of the unjust enrichment was only $200,000, and (b) they were entitled to prejudgment interest. After receiving Lisa's response, the trial court denied the Ver Bryckes' motion without a hearing or explanation.

Lisa appealed, and the Ver Bryckes cross-appealed. Each side points to aspects of the record and the law as grounds for appellate victory. Before addressing their arguments, we briefly summarize certain portions of the record relevant to them.

### The Ver Bryckes' Claims

The Ver Bryckes advanced two alternative theories in support of their claims for relief. They argued that the $200,000 was either a loan or a conditional gift. They offered testimony and documents in support of both theories.

At trial, John testified that he "always considered the money a loan, and I made a verbal agreement with my father that I would pay him back one way or another, if not now then later[.]" At the time Mr. Ver Brycke advised John and Lisa that the Ver Bryckes would advance them the $200,000 they needed to buy Rabbit Hill, John related,

with [Lisa] by my side I said, "Daddy, ... I'm going to pay you back one way or another. I don't like the idea of you having this [$1,200 a month] mortgage payment. And I'm going to try to pay you back that if I can, and if the place is ever sold you will be paid back immediately."

John claimed that Lisa agreed with his statement, saying, "That's right."

John denied that the Ver Bryckes used the $200,000 as a gift "enticement on [his parent's] part," to persuade him to move to Annapolis from Memphis, "other than just wouldn't it be great if we were all right here. But there were no promises made. I don't recall ever any mention particularly on that house of any financial assistance for that."

John nevertheless confirmed that he and Lisa understood and accepted that the purpose of the $200,000 was to enable them to purchase and live next door to the Ver Bryckes.

> [T]here was never [anything] ... written down that said, "You must do this and you must help me, and you will help me in my old age and we will watch your children." The whole thing was just understood.... There was no contract. There was no agreement.... It was a family and a pretty happy family[.]

Both Lisa and John desired to live close by because

> you have all sorts of nice relationships and the things that come out of them to mutually help each other.... And that was the condition for living right next door instead of a community 15 miles away or staying in Memphis, because we would have had all these nice things that ... were conditions.

He also testified that his parents did not benefit "one bit" from his renovation of the Sherwood Forest cottage.

On the other hand, Mr. Ver Brycke did not view the $200,000 as a loan. He testified that, from his perspective, the $200,000

> was a gift. It was a conditional gift. All of it is, the whole $200,000, and this was understood by us before ... I went to Mr. Holden. That's why I always say yes, it is a gift, and to this day it's been a gift. It's a conditional gift ....
> Before we went to Mr. Holden when we were talking about this. We all got together and we decided to pool our resources, and none of us could do this by ourselves. It was a family understanding. We didn't have any contract, but

none of us would have done anything if it wasn't understood that they'd come and live there. Lisa and John wouldn't have. Pam wouldn't have.

Mr. Ver Brycke also testified that at the September 30, 1992 closing, he and his wife "passed the whole $200,000 to ... John and Lisa, by ... making out these checks for $40,000 to take out the first increment of this incremental gift plan. John and Lisa made out these $10,000 notes, and they were given to [the Ver Bryckes] later." Mr. Ver Brycke also emphasized that there was a mutual understanding that this $200,000 would be used to enable John and Lisa to live next door. "[W]hether you call it a loan or whether you call it a gift, I transferred to them $200,000 in exchange for the understanding that they were going to live there."

Pamela Ver Brycke corroborated Mr. Ver Brycke's testimony. At trial, she testified that her brother asked for her help in purchasing Rabbit Hill, and that she would not have purchased the guest house otherwise.[8] When asked why her brother wanted to buy Rabbit Hill, she explained that, "[p]artly the advantage was that it was next door to my parents, and one of the reasons was that in their advancing age they would be next door to help take care of them and [the] benefit to my ... parents would [be] ... having the grandchildren next door."

As for the December 1992 gift letter,[9] Mr. Ver Brycke testified that he did not intend to release any of the promissory notes or the deed of trust when he signed that letter. He explained why he signed the letter.

---

8. She also testified that her parents did not help her pay for her $200,000 share of Rabbit Hill's purchase price, nor had they ever given her a large gift of money.

9. There was a dispute about who wrote the December 1992 gift letter. Mr. Ver Brycke testified that Lisa wrote the letter, then brought it to him to sign. Lisa denied writing the letter. She testified that she "went ... over to [the Ver Bryckes'] house, and ... told [Mr. Ver Brycke] that Norwest needed a letter, and he said that he would take care of it."

Well, you know, in all these mortgages that I've seen there's a letter from the mortgage company saying that if there are any irregularities or anything like that that you will agree to correct them, and they usually say that they're going to sell these letters, these mortgages, to another company.

They don't hang onto them very long, and for that reason if the company to who[m] they're going to sell them has an objection to them you agree to repair them. I thought that's what it was. I didn't think very much about this at all, and I figured I had given them a gift, a conditional gift.

The jury also heard testimony from Ronald Holden, the estate planning attorney who advised the Ver Bryckes, and reviewed his notes and September 11, 1992 advice letter regarding the $200,000 transaction. Holden's notes state: "Son buying new home and parents want to loan $200,000 in gift in $10,000 increments up to $40,000 per year." At trial, Holden testified that "[t]he nature of my advice was fundamentally they wanted to give this gift of $200,000, this amount [in 1992].... Fundamentally that would have been their objective, but they did not want to do it in a way that used up their unified credit."

According to Holden, the $200,000 was a loan. He testified that there was never any discussion of a conditional gift.

[W]hat was being proposed was a loan that may be forgiven. It wasn't required that it be forgiven.... From an estate planning point of view, from the [Ver Bryckes'] point of view, it was to their advantage to forgive it at a faster pace versus a slower pace, because that would help to save overall federal estate taxes.

Holden testified that Mr. Ver Brycke never told him about the August 10, 1992 gift letter. He acknowledged that this letter conveyed an intent contrary to the plan that he set up and laid out in his September 11, 1992 advice letter.

### Lisa's Defenses

Lisa's primary defense to the Ver Bryckes' claims was that the $200,000 was an unconditional gift, just as the August and December 1992 gift letters said it was.

According to Lisa, in 1992 she and John began looking into buying a home in Annapolis, where the Ver Bryckes lived. When asked why she agreed to move to Annapolis, Lisa explained that

I did eventually agree to move up here. John's parents are older.... My mom had ... passed away.... So it seemed important to have the kids to be able [to] live by grandparents, and John and his family, they were very excited about it. So eventually I acquiesced.

She testified that the Ver Bryckes were "going to make a gift" of $200,000 toward the $750,000 purchase price of the home. After an offer was made on Rabbit Hill, Mr. Ver Brycke

said he was going to see an estate attorney ... in order to figure out the best way to avoid paying taxes.... [T]he gift was just a gift. He was meeting with an attorney to figure out some plan for their records to establish some way to ... make a paper trail for the IRS.... It didn't affect us at all.

Lisa denied that there were any conditions in connection with the $200,000 gift, either before or after settlement.[10] She testified, however, that her understanding was that she could not have used the money to build a house in Tennessee, or for anything other than the purchase of Rabbit Hill.

According to Lisa, the Ver Bryckes never demanded or suggested that Lisa and John repay them, even after they renovated the Sherwood Forest cottage instead of Rabbit Hill. She claimed that the Ver Bryckes knew about the cottage renovations, and eventually approved of them.[11]

---

10. Lisa also pointed out that on their residential loan application, signed at closing, both she and John certified that none of the downpayment on the house was borrowed, and that some of the $200,000 was used as downpayment on the house.

11. Lisa testified that she and John spent $156,000 on renovating the cottage. John disputed this amount, but agreed that at least $139,500 was spent on the cottage renovations.

In support of her unconditional gift defense, Lisa also points to the testimony of Jerome Feldman, an attorney for Mid–Maryland Title Company, Inc., who did the Rabbit Hill settlement. At trial, Feldman testified that, to his understanding, the $200,000 "was a gift. [The Ver Bryckes] were going to give a gift of $200,000 to John and Lisa." Feldman admitted, however, that in his deposition, he testified that he did not know if it was a gift or a loan.

Feldman also testified that he was never shown the August 10, 1992 "gift letter." According to Feldman, this letter indicat[ed] that [Mr. Ver Brycke] was giving John and Lisa $200,000 for the purchase of [Rabbit Hill], and that there was no obligation expressed or implied to repay that sum at any time. . . . [T]his document is relied upon by the lender to verify that John and Lisa would have $200,000 unconditionally to close on the purchase of the property.

When asked by Lisa's attorney whether he would have completed the settlement if he had known that the $200,000 was a conditional gift, Feldman replied, "Absolutely not. We gave the documents to [Mr.] VerBrycke. We never recorded the deed of trust between John and Lisa and [Mr.] Ver Brycke, nor would we have."

## DISCUSSION

### Lisa's Appeal

### I. and II.

### Statute Of Limitations And Conditional Gift

Lisa asserts that, if in fact the Ver Bryckes made a conditional gift to her and John, their recovery of that gift is barred by the general three year statute of limitations in Md.Code (1974, 2002 Repl.Vol.), section 5–101 of the Courts & Judicial Proceedings Article ("CJ"), applying to civil actions at law. She contends that the longer, 12 year statute of limitations for a "promissory note or other instrument under seal," set forth in CJ section 5–102, does not apply because the jury found that the $200,000 payment was a conditional gift and not a

loan. According to Lisa, because the jury found that the Ver Bryckes had made a conditional gift of $200,000 to Lisa, and the jury "[c]learly ... found that the [s]tatute of [l]imitations began to run in January 1995 on the entire amount claimed by [the Ver Bryckes]," their recovery of that $200,000 is barred because they filed suit in 1999, more that three years after the statute of limitations began to run.

The Ver Bryckes respond with three contentions. First,[12] they argue that the interrogatory on the verdict sheet asking when the Ver Bryckes knew that John and Lisa would never live at Rabbit Hill was not framed in a way that invoked the bar of the statute of limitations. Second, they contend that "the statute of limitations did not begin to run until the sale of the house made the performance of the condition impossible." Third, they claim that, "in the case of unjust enrichment, the cause of action cannot be asserted until the retention of the benefit becomes unjust, and the statute of limitations does not begin to run until that point in time."

■ Before addressing these contentions, a brief review of Maryland decisional law on the statute of limitations is helpful. Maryland has adopted the so-called "discovery rule" as a means for determining the "trigger date" for the statute of limitations.

> Recognizing the unfairness inherent in charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury, [the Court of Appeals] has adopted the discovery rule to determine the date of accrual. The discovery rule tolls the accrual of the limitations period until the time the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury. Thus, before an action is said to have accrued, a plaintiff must have notice of the nature and cause of his or her injury.

---

12. We describe these arguments in the reverse order that the Ver Bryckes present them.

*Frederick Rd. Ltd. P'ship v. Brown & Sturm,* 360 Md. 76, 95–96, 756 A.2d 963 (2000) (citation omitted).

In *Pennwalt Corp. v. Nasios,* 314 Md. 433, 550 A.2d 1155 (1988), the Court of Appeals explained the policy bases for statutes of limitation. According to the Court, statutes of limitation

> were enacted in an effort to balance the competing interests of potential plaintiffs, potential defendants, and the public. The statutory period provided by a statute of limitations represents a compromise of these interests and "reflects a policy decision regarding what constitutes an adequate period of time for a person of ordinary diligence to pursue his claim." By creating a limitations period, the legislature determined that a plaintiff should have only so long to bring his action before he is deemed to have waived his right to sue and to have acquiesced in the defendant's wrongdoing. Limitations statutes therefore are designed to (1) provide adequate time for diligent plaintiffs to file suit, (2) grant repose to defendants when plaintiffs have tarried for an unreasonable period of time, and (3) serve society by promoting judicial economy.

*Id.* at 437–38, 550 A.2d 1155 (citations omitted).

■ The Court of Appeals has held that " '[i]t is the discovery of the injury, and not the discovery of all of the elements of a cause of action that starts the running of the clock for limitations purposes.' " *Lumsden v. Design Tech Builders, Inc.,* 358 Md. 435, 450, 749 A.2d 796 (2000) (citation omitted). Similarly, we have explained that

> [t]he statute of limitations begins to run when the potential plaintiff is on "inquiry notice" of such facts and circumstances that would "prompt a reasonable person to inquire further." Once on notice of one cause of action, a potential plaintiff is charged with responsibility for investigating, within the limitations period, all potential claims and all potential defendants with regard to the injury.

*Doe v. Archdiocese of Washington,* 114 Md.App. 169, 188–89, 689 A.2d 634 (1997) (citation omitted).

To evaluate the Ver Bryckes' first argument against the bar of limitations, we need to examine the exact question posed to the jury. Question 3C asked the jury: "If you find by a preponderance of the evidence that the Plaintiffs, Mr. and Mrs. Ver Brycke, III, made a conditional gift, were Plaintiffs aware that the conditions would not be satisfied on or before January 1, 1995?" The Ver Bryckes explain their argument:

> The question does not establish *when* the Plaintiffs became "aware that the conditions would not be satisfied on or before January 1, 1995." The date in issue 3c is meaningless. Although [Lisa] would like to read the question as if it were worded differently (such as, "Were the Plaintiffs aware on or before January 1, 1995, that the condition would *never* be satisfied?"), the jury's response gives no clue as to whether the Plaintiffs were aware in 1995, or 1992, or 1999, that the condition would never be satisfied.

We find this interrogatory ambiguous. The words "on or before January 1, 1995" could modify the word "satisfied," rather than the word "aware." If the date modifies the word "satisfied," the interrogatory would not resolve the statute of limitations issue, which turned on whether the Ver Bryckes were **aware before January 1, 1995** that the condition of their gift would not be met. The question would only resolve the statute of limitations issue if "on or before January 1, 1995" is interpreted to modify the word "aware."

During closing argument, however, the Ver Bryckes' attorney interpreted the question just as Lisa now does. In explaining to the jurors how his client would like them to answer Question 3C, the Ver Bryckes' attorney argued:

> I think the testimony of both Mr. VerBrycke senior ... and Barbara Ver Brycke was that they didn't know until the divorce had gone through and the house was sold that there was a certainty that this condition[] was never going to be met. So certainly **that was after January 1 of '95** and you answer that question "no." (Emphasis added.)

Moreover, counsel candidly conceded at oral argument that he knew that the interrogatory was ambiguous before it went

to the jury. Knowing that this question could be misinterpreted by the jury, but also knowing that its intended purpose was to resolve the statute of limitations issue raised by Lisa, the Ver Bryckes had the burden to object to its inclusion, and point out its ambiguity. *See* Md. Rule 2–522(c)("No party may assign as error the submission of issues to the jury . . . unless the party objects on the record before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection"). They chose not to do so, and must live with the consequences of that decision. These consequences are not as far-reaching as Lisa would urge, however, because we shall hold that limitations only barred $40,000 of the $200,000 judgment. Before we explain our reasons for this limited application of the limitations defense, we return to the Ver Bryckes' second and third arguments against the statute of limitations.

### When Limitations Began To Run

As we indicated above, the Ver Bryckes argue that the statute of limitations on their claim that the condition of the gift failed did not begin to run until the sale of Rabbit Hill made the performance of that condition impossible, rather than at the time they became aware that the condition would not be satisfied. Although we have found no cases addressing the statute of limitations for a conditional gift, we are persuaded that the Ver Bryckes' theory is inconsistent with the conceptual underpinning of a cause of action for conditional gifts.

"A donor may limit a gift to a particular purpose, and render it so conditioned and dependent upon an expected state of facts that, failing that state of facts, the gift should fail with it." *Grossman v. Greenstein*, 161 Md. 71, 73, 155 A. 190 (1931)(involving gift on condition of marriage). *Accord In re Stoltz*, 283 B.R. 842, 844 (Bankr.D.Md.2002)(applying Maryland law and holding, on theory of conditional gift, that gift of engagement ring was recoverable by donor on failure of contemplated marriage); *Courts v. Annie Penn Mem'l Hosp., Inc.*, 111 N.C.App. 134, 431 S.E.2d 864, 866–68 (1993)(citing

and quoting *Grossman* in claim involving gift of stock); *Wilkin v. Wilkin,* 116 Ohio App.3d 315, 688 N.E.2d 27, 29–30 (1996)(donor gave money to daughter on condition she would use the money to take a French course in New York City). Because the right to recover the gift depends on the failure of the condition, which causes injury to the donor and makes retention of the gift wrongful, it is only logical that the cause of action for recovery of a conditional gift accrues at the time the condition fails. *Cf. Grossman,* 161 Md. at 73, 155 A. 190 (sustaining bill of complaint seeking recovery of gift given in contemplation of marriage of donor's daughter, because fiancé announced that he did not intend to marry daughter); *Wilkin,* 688 N.E.2d at 29–30 ("When donee did not take the course, the condition failed and [she] became obligated to return the gift").

■ The Ver Bryckes' theory is incompatible with the holding in *Grossman.* Under their theory, Grossman would have had no cause of action when he brought the suit because his daughter's fiancé could change his mind up until he married someone else or died. The Court of Appeals, however, sustained the cause of action on the basis that he had announced his intention not to marry. Similarly, in this case, the jury found that Lisa and John made it known, on or before January 1, 1995, that they were not intending to live at Rabbit Hill. In both cases, the cause of action accrued upon failure of the condition. As we indicated earlier, a plaintiff's action accrues when he has " 'inquiry notice' of such facts and circumstances that would 'prompt a reasonable person to inquire further.' " *Doe,* 114 Md.App. at 188, 689 A.2d 634; *see Frederick Road Ltd. P'ship,* 360 Md. at 117–18, 756 A.2d 963 (same "inquiry notice" standard applies to equitable claims). In response to Question 3C of the verdict sheet, the jury clearly found that the Ver Bryckes were aware on or before January 1, 1995 of Lisa and John's intent.

## The Applicable Limitations Period

■ Except for suits on specialties, the general three year statute of limitations applies to civil actions at law. *See*

CJ § 5–101. Limitations for an equitable action, known as laches, will depend upon the nature of the actions under consideration. Choosing the applicable measure of impermissible delay for cases in which an equitable remedy is sought is most straightforward in cases with concurrent legal and equitable remedies, and the applicable statute of limitations for the legal remedy is equally applicable to the equitable one.[13] We explain why we believe that rule applies in this case.

[I]f the remedy sought in equity is analogous to a remedy cognizable at law, and the statute of limitations prescribes a time within which the legal action must be instituted, equity will follow the law and bar the action. If this were not so a litigant could circumvent the statute by by-passing the law courts and bring his case in equity.

*Grandberg v. Bernard,* 184 Md. 608, 611, 42 A.2d 118 (1945). *Accord Stevens v. Bennett,* 234 Md. 348, 351, 199 A.2d 221 (1964); *Rettaliata v. Sullivan,* 208 Md. 617, 621, 119 A.2d 420 (1956); *Jahnigen v. Smith,* 143 Md.App. 547, 555–56, 795 A.2d 234, *cert. denied,* 369 Md. 660, 802 A.2d 439 (2002).

This rule rests on the reality that the jurisdiction of law and equity may be concurrent with respect to some causes of action. *See Rettaliata,* 208 Md. at 621, 119 A.2d 420 (recognizing that a suit could be brought at law for money had and received, or a suit in equity to enforce a constructive trust); *Webb v. Baltimore Commercial Bank,* 181 Md. 572, 581, 31 A.2d 174 (1943)(same). *See also* Dan B. Dobbs, *Law Of Remedies* § 2.1(2) at 54 (2d ed. 1993)(*"Dobbs"*)("both law courts and equity courts ma[ke] restitutionary awards or orders"). "An analogous statute is one that applies to a similar cause of action or one that applies to the same cause of action when a different remedy is sought." *Dobbs, supra,* § 2.4(4) at 77. Applying this rule, we must determine whether there was a legal action

---

13. Although establishing laches in an action that is strictly equitable in nature requires a showing of prejudice, as well as the passage of time, there is no need to show prejudice to establish laches in an equitable action that has an analogous legal cause of action. *See Villarreal v. Glacken,* 63 Md.App. 114, 127–28, 492 A.2d 328 (1985).

analogous to the three equitable actions brought in this case.

Classifying a cause of action as legal or equitable can be a murky undertaking. *See id.*, § 2.6(3) at 106 ("courts have not settled fully on any firm approach"). *Dobbs* identifies two primary tests for determining whether a claim is equitable or legal:

*First*, a claim could be deemed equitable if it sought a coercive remedy like injunction, otherwise not. *Second*, a claim could be deemed equitable if the plaintiff sought to enforce a right that was originally created in the equity courts, or a right that was traditionally decided according to equitable principles.

*Id.* at 105, 802 A.2d 439. Despite recognition of the dual aspects of the decision, Dobbs observes that "[o]verwhelmingly, courts characterize claims according to the remedies sought rather than according to subject matter or substantive rules involved." *Id.* at 106, 802 A.2d 439. *See, e.g., Grossman*, 161 Md. at 74, 155 A. 190 (suggesting suit to recover conditional gift could be legal or equitable, depending on remedy sought).

Here, the jury found in favor of the Ver Bryckes on three causes of action—conditional gift, unjust enrichment, and promissory estoppel. Applying the second aspect of the two-part test first, we find that unjust enrichment and promissory estoppel have strong equitable roots, and we can comfortably classify them as traditional equitable actions. *See Konover Prop. Trust, Inc. v. WHE Assocs., Inc.*, 142 Md.App. 476, 482, 790 A.2d 720 (2002)(both promissory estoppel and unjust enrichment are equitable claims). We have found no clear case law in Maryland, however, instructing us as to whether a suit based on recovery of a conditional gift was traditionally decided according to equitable principles. We have found only one out-of-state case helpful.[14] It characterizes "rescission and restitution based upon the failure of a conditional gift" as

---

14. The dearth of authority on this point may reflect the relatively few cases involving conditional gifts.

"equitable theories." *See Wagener v. Papie*, 242 Ill.App.3d 354, 182 Ill.Dec. 417, 609 N.E.2d 951, 955 (1993).[15] With this dearth of authority regarding whether a suit based on a conditional gift is traditionally classified as legal or equitable, we are inclined to look, as most courts have, at the first component of the *Dobbs* test-whether the suit sought a coercive remedy.

Applying the first part of the *Dobbs* two-part test, we find one Maryland case brought on a conditional gift theory that was held to be properly framed in equity, presumably because it sought to clear title to real property. *See Green v. Redmond*, 132 Md. 166, 103 A. 431 (1918)(suit in equity to declare mortgage unenforceable because conditions of conditional gift were satisfied). *Cf. Harmon v. State Roads Comm'n*, 242 Md. 24, 42–43, 217 A.2d 513 (1966)(McWilliams, J., dissenting)(courts of equity are proper forum for suit to recover real property after breach of condition subsequent). Out-of-state suits to recover title to real property based on conditional gifts also have been held to be equitable. *See, e.g., Wagener*, 182 Ill.Dec. 417, 609 N.E.2d at 955–56 (suit for recovery of real property and damages on failure of engagement was equitable cause of action); *Fanning v. Iversen*, 535 N.W.2d 770, 773–75 (S.D.1995)(same); *cf. McLain v. Gilliam*, 389 S.W.2d 131, 132 (Tex.Ct.App.1965)("the rule applies to real estate as well as personalty ... [and] in a proper case equity will take jurisdiction to enforce a reconveyance"). These cases are more readily classified as equitable due to the remedy sought— changing title to real property—rather than the equitable basis of the substantive theory of recovery. *See also Romney v. Steinem*, 228 Md. 605, 608, 180 A.2d 873 (1962)("The right of a plaintiff who is himself in possession of land to invoke the aid of equity in an action to quiet title has been recognized in

---

15. In *Barger v. French*, 122 Kan. 607, 253 P. 230 (1927), the Supreme Court of Kansas held that an action to rescind a transaction claimed to be a gift on conditions was an equitable claim. We do not consider this case to be instructive, however, because the suit for rescission was based on the grantor's mental incapacity, rather than the conditional nature of the gift.

[Maryland] for many years"); *Dobbs, supra,* § 2.6(3) at 106 (rights arising from mortgages are equitable in a substantive sense).

The Ver Bryckes sought recovery from the escrowed proceeds of the Rabbit Hill sale, as well as a personal judgment against Lisa and John. Because the remedy they sought was not coercive,[16] their claims for relief seem to fall on the legal side of the ledger. *See Dobbs, supra,* § 2.6(3) at 108 (relying on *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962))(if remedy is not coercive, but is merely a claim for money, it is legal); *see also id.* at 106 ("if the remedy sought is a judgment to be enforced *in rem* by seizure of property, the claim is legal"; "an action for an ordinary money judgment . . . is an action at law").

Thus, there are three bases of recovery, two brought under traditional equitable theories, all of which request relief that is legal in nature. We hold that the conditional gift cause of action here was legal, and the other two were equitable, because they are traditionally based in equity.

As an alternative to our resolution of this equitable/legal classification, we conclude that, with respect to all three theories, there is an analogous legal theory of recovery. The same facts supporting the conditional gift are at the heart of the unjust enrichment and promissory estoppel claims-that the $200,000 was extended to Lisa and John by the Ver Bryckes in exchange for a promise, or subject to a condition, that Lisa and John would live at Rabbit Hill, with the understanding they would help take care of the Ver Bryckes as they grew

---

16. Actions to foreclose mortgages are equitable, even though no particularly coercive remedy is sought. *See Dobbs, supra,* § 2.6(3) at 111–12; *see also Plaza Corp. v. Alban Tractor Co.,* 219 Md. 570, 577–78, 151 A.2d 170 (1959)("Foreclosure of mortgages after default has long been peculiarly within a court of equity's jurisdictional powers"). Although we hold, *infra,* that the Ver Bryckes can recover a portion of their judgment because they were secured by a deed of trust, that does not mean that this suit is an action to foreclose a mortgage or deed of trust. The lien of the deed of trust followed the sale proceeds of Rabbit Hill when the circuit court signed its March 2000 order directing that those proceeds be placed in escrow pending the outcome of this litigation.

older. Retention of the gift became unjust, and supported an action for unjust enrichment, because Lisa and John did not fulfill that condition. *See Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151, 757 A.2d 108 (2000)(" 'A person who receives a benefit by reason of an infringement of another person's interest, or of loss suffered by the other, owes restitution to him in the manner and amount necessary to prevent unjust enrichment' ")(quoting *Restatement (Second) of Restitution* § 1 (Tentative Draft No. 1, 1983)(Tent.Restatement)). Promissory estoppel applies because Lisa and John made a promise that induced the Ver Bryckes to give them the gift, and did not live up to this promise. *See Pavel Enters., Inc. v. A.S. Johnson Co.*, 342 Md. 143, 166–69, 674 A.2d 521 (1996); *see also Kiley v. First Nat'l Bank*, 102 Md.App. 317, 337, 649 A.2d 1145 (1994), *cert. denied*, 338 Md. 116, 656 A.2d 772, *cert. denied*, 516 U.S. 866, 116 S.Ct. 181, 133 L.Ed.2d 120 (1995)("promisor is estopped if, at the time of making the promise, he or she should have foreseen reliance, and the enforcement of the promise is necessary to prevent injustice").

This same factual predicate also could support an analogous legal action—a suit in contract or for restitution to recover the amount of the conditional gift. *See, e.g., Lindsay v. Glass*, 119 Ind. 301, 21 N.E. 897, 897–98 (1889)(affirming money judgment for sister against brother in amount she gave him in exchange for promise of support); *Franklin v. Moss*, 101 S.W.2d 711, 714 (Mo.1937)(suggesting that a gift conditioned on payment of support or a home to the donor could be classified as a contract); *Wilkin*, 688 N.E.2d at 28–30 (father recovered money judgment against daughter on failure of conditional gift). The law of contracts recognizes that a condition subsequent can alter the legal relations of the parties to a contract. *See Corbin on Contracts* §§ 30.7, 39.1, 39.5 (2001).

Here, the parties' relationship altered when Lisa and John's plans to live at Rabbit Hill did not materialize, and the condition of the gift failed. Because the gift was money, and the Ver Bryckes were seeking to recover money damages, they could have brought a legal action for restitution. Accord-

ingly, under the teachings of *Grandberg, Stevens, Rettaliata*, and *Jahnigen*, the statute of limitations applicable to the claim for recovery of a conditional contract, unjust enrichment, and promissory estoppel was the three year statute generally applicable to suits at law under CJ section 5–101.

Because of the jury finding that the Ver Bryckes were on inquiry notice of the failed condition on or before January 1, 1995, the limitations period for recovery of the $40,000 not secured by the deed of trust expired, as a matter of law, before the Ver Bryckes filed their complaint. *See Frederick Road Ltd. P'ship*, 360 Md. at 117–18, 756 A.2d 963 (same "inquiry notice" standard applies to equitable claims).

### The Remedy Provided By The Deed of Trust

A suit at law or in equity, however, was not the only remedy that the Ver Bryckes possessed. They also were the secured parties under a deed of trust constituting a lien on Rabbit Hill. When the circuit court, at Lisa's request, directed that the proceeds from the sale of Rabbit Hill be held in escrow, the Ver Bryckes' lien, to the extent it was valid, followed those funds. To resolve the Ver Bryckes' entitlement to some or all of the escrowed funds, we must examine the nature of the debt secured by the deed of trust.

The deed of trust recites that it secures unto the Ver Bryckes the sum of $160,000, and that the debt is "evidenced by Borrower's note ..., which "provides for monthly payments, with the full debt, if not paid earlier, due and payable on October 1, 2022." The jury's finding that the transaction between the parties was a conditional gift, rather than a loan, does not impair the deed of trust. An express or implied promise incident to a conditional gift also can be secured by a mortgage or deed of trust.

"Any contractual obligation reducible to a money value may be secured by a mortgage. The obligation secured is ordinarily one for the payment of money, created at the time of the execution and delivery of the mortgage instrument." 5 Basil Jones, *Tiffany on the Law of Real Property* § 1402 at 280 (3d

ed. 1939 & 2002 Cum.Supp.)(*"Tiffany "*). A mortgage or deed of trust, however, also can secure an obligation other than one to pay money. *See* 4 Michael Allan Wolf, *Powell On Real Property* § 37.12[1] at 37–57 (2002) (recognizing that obligations other than repayment of money debt may be secured by deed of trust). "The condition of a mortgage may be the payment of a debt, the indemnity of a surety, or the doing or not doing any other act." . *Cook v. Bartholomew,* 60 Conn. 24, 22 A. 444, 444 (1891). The stipulation secured by the deed of trust can be one that is inferred from circumstances in connection with conveyance of the real property. *See Tiffany, supra,* § .1403 at 281.

Mortgages that secure an obligation for lifetime support of a person making a conveyance of real property to the mortgagor have been recognized as valid. *See id.; Cook,* 22 A. at 444 (recognizing validity of mortgage securing promise to support mortgagee for her lifetime); *Butterfield v. Lane,* 114 Me. 333, 96 A. 233, 234–35 (1915)(same); *Bachmeier v. Bachmeier,* 69 Minn. 472, 72 N.W. 710, 710 (1897)(same). We perceive these mortgage cases to be analogous to the Ver Bryckes' deed of trust securing the Ver Bryckes' interest in Rabbit Hill because the Ver Bryckes, as secured parties, made a $200,000 contribution to the purchase of the property, based on Lisa and John's explicit or implicit promise to live next door. Like an obligation of support, this promise would have allowed the Ver Bryckes to benefit from the presence of family to assist them in their later years.

When the Ver Bryckes learned before 1995 that Lisa and John would not live at Rabbit Hill, they elected to forbear from exercising their right to sue, but they still had the right to rely on the security of their deed of trust. As reflected in the language of the deed of trust, Lisa and John agreed that the Ver Bryckes could obtain repayment of $160,000 out of any proceeds from the sale of Rabbit Hill. Pursuant to that agreement, the Ver Bryckes' action on the deed of trust, which is an instrument under seal, could be brought within 12 years after it accrued. *See* CJ § 5–102(a)(action on instrument under seal must be brought within 12 years after it accrues).

*Cf.* Md.Code (1974, 1996 Repl.Vol.), § 7–106(c)(1) of the Real Property Article ("RP")("If a ... deed of trust remains unreleased of record, ... any interested party is entitled to a presumption that it has been paid if ... 12 years have elapsed since the last payment date called for in the instrument").

We realize that the Ver Bryckes did not record the deed of trust among the land records for Anne Arundel County until 1996. *See* RP § 3–101 ("no ... deed may pass or take effect unless the deed granting it is executed and recorded"). Upon its execution, however, the deed of trust was enforceable between the parties, even if not recorded. *See Equitable Trust Co. v. Imbesi,* 287 Md. 249, 254, 412 A.2d 96 (1980)(" 'if a party makes a mortgage, or affects to make one, but it proves to be defective, by reason of some informality or omission, such as failure to record in due time, defective acknowledgment, or the like, though even by the omission of the mortgagee himself, as the instrument is at least evidence of an agreement to convey, the conscience of the mortgagor is bound, and it will be enforced by a court of equity' ") (citation omitted); *Adams v. Avirett,* 252 Md. 566, 571, 250 A.2d 891 (1969)("Where [a party] ... intends by a writing to create a lien on his land to secure another but fails to create a statutorily valid security instrument, his expressed intention my be enforced in equity by the other party to the instrument"). Thus, under CJ section 5–102, the 12 year statute of limitations for instruments under seal applied to the $160,000 obligation that it secured.

To be sure, the jury did not make a finding that the conditional gift was secured by the deed of trust. Nor was it asked to decide that issue. In their complaint, as amended, the Ver Bryckes sought enforcement of the deed of trust, by recovering the sale proceeds held in the escrow account. They introduced the deed of trust into evidence. Laches and the statute of limitations are affirmative defenses, and the party asserting their bar has the burden of proof on those issues. *See* Md. Rule 2–323(g); *Newell v. Richards,* 323 Md. 717, 725, 594 A.2d 1152 (1991)("As a general rule, the party raising a statute of limitations defense has the burden of

proving that the cause of action accrued prior to the statutory time limit for filing the suit").[17] Accordingly, Lisa had the burden of proving that limitations barred the Ver Bryckes' action to enforce the deed of trust.

 The party with the burden of proof on a critical issue also has the burden of placing that issue before the jury. *See Edwards v. Gramling Eng'g Corp.*, 322 Md. 535, 549, 588 A.2d 793, *cert. denied*, 502 U.S. 915, 112 S.Ct. 317, 116 L.Ed.2d 259 (1991)("it is counsel's responsibility to assure that all critical issues are submitted to the jury"). In cases involving both legal and equitable claims, issues that were not submitted to the jury on the special interrogatory verdict sheet may be decided by the trial court after the jury renders its verdict. *See id.* at 548–50, 588 A.2d 793; Md. Rule 2–522(c). "[I]f [the trial court] fails to do so, the finding shall be deemed to have been made in accordance with the judgment entered." Md. Rule 2–522(c).

Lisa did not ask that the jury decide whether the conditional gift was secured by the deed of trust.[18] Indeed, before she moved for JNOV, the only arguments that Lisa made regarding the statute of limitations asserted that limitations barred recovery of the $40,000 represented by the four $10,000 checks

---

17. There are some circumstances in which additional burdens may be imposed on the party seeking to avoid the bar of limitations, but none are present here. *See Comptroller v. World Book Childcraft Int'l, Inc.*, 67 Md.App. 424, 444, 508 A.2d 148 (1986)("a party relying on a matter in avoidance of the statute of limitations defense bears the burden of proving such a matter where it is shown that the cause of action accrued earlier than permitted by applicable statute"); *Frederick Road Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 98, 756 A.2d 963 (2000)("Fraud perpetrated by an adverse party may ... serve to postpone the accrual date of a cause of action"); CJ § 5–203 ("If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud").

18. In light of the jury's finding on three theories in favor of the Ver Bryckes, had Lisa asked, the answer also may well have favored the Ver Bryckes.

given to Lisa and John on the day of settlement.[19] The trial court denied Lisa's motion for JNOV, and entered judgment in favor of the Ver Bryckes, ordering that the escrowed funds that were the sale proceeds from Rabbit Hill be used to pay the judgment. Accordingly, we must presume that the trial court found that the deed of trust secured the indebtedness of Lisa and John to the Ver Bryckes. This was permissible, notwithstanding the jury's finding that the Ver Bryckes had made a conditional gift, rather than a loan to Lisa and John. *See Howard v. Hobbs,* 125 Md. 636, 642–45, 94 A. 318 (1915)(written instrument may evidence a gift even though it is in the form of a loan).

The deed of trust, however, only permits recovery of those amounts secured by the deed of trust. By statute, the lien of the deed of trust can only be a "lien or charge on any property for any principal sum ... appearing on the face of the mortgage or deed of trust and expressed to be secured by it[.]" RP § 7–102(a). This deed of trust recited on its face that it secured $160,000. Accordingly, the Ver Bryckes cannot recover the full amount of the $200,000 conditional gift by relying on the lien of the deed of trust for that recovery.

## *The Ver Bryckes' Cross–Appeal*

### III.

### Ver Bryckes' Claim For Disgorgement of Profits

Nor can the Ver Bryckes recover the amounts sought under their cross-appeal, for disgorgement of the profits from the sale of Rabbit Hill. This issue was decided adversely to the Ver Bryckes by the jury. During his closing argument, the Ver Bryckes' attorney argued that Lisa and John had been unjustly enriched by $356,348. Counsel explained that Rabbit Hill was purchased for $550,000, and the Ver Bryckes contributed $200,000, or 36.36 percent of this amount. He then asked

---

**19.** Lisa made this argument with her motion for summary judgment, captioned "PLAINTIFFS CLAIM FOR $40,000.00 IS BARRED BY THE THREE YEAR STATUTE OF LIMITATIONS." She made it again at the close of evidence in a motion for judgment.

the jury to award the Ver Bryckes 36.36 percent of the profit, equaling $156,348, in addition to the $200,000 originally transferred, for a total of $356,348.

We must assume that the jury considered the $356,348 unjust enrichment claim advanced by the Ver Bryckes, but ultimately rejected that amount in favor of the $200,000 unjust benefit it found. We cannot and will not disturb the jury's finding, implicit in its conclusion that Lisa was unjustly enriched by only $200,000, that the Ver Bryckes were not entitled to a portion of those profits.

## IV.

### Ver Bryckes' Claim For Prejudgment Interest

 RP section 7–102, which limits the amount secured under a mortgage or deed of trust to that appearing on the face of the secured instrument, applies only to the principal amount. Thus, the Ver Bryckes' claim for prejudgment interest is not barred by this statute. Their cross-appeal on this issue nevertheless must fail, because it was still the province of the trier of fact to decide whether to award any prejudgment interest. The parties stipulated that the judge would be the trier of fact on this issue after the jury returned its verdict, and the judge declined to make such an award.

The Ver Bryckes argue that they were entitled to prejudgment interest on the $200,000 amount as of right. Lisa responds that the decision regarding whether to award prejudgment interest is discretionary on the part of the fact finder, and that the court in this case did not abuse its discretion in declining to award such interest.

 "The purpose of the allowance of prejudgment interest is to compensate the aggrieved party for the loss of the use of the principal liquidated sums found due it and the loss of income from such funds." *I.W. Berman Props. v. Porter Bros., Inc.*, 276 Md. 1, 24, 344 A.2d 65 (1975). Whether a party is entitled to prejudgment interest generally is left to the discretion of the fact finder. *See id.* at 18, 344 A.2d 65.

"The exercise of discretion to award prejudgment interest must be based on the 'equity and justice appearing between the parties and a consideration of all the circumstances.'" *Agnew v. State,* 51 Md.App. 614, 654, 446 A.2d 425 (1982) (citation omitted).

 Admittedly, there are several exceptions to this general rule, under which a party is entitled to prejudgment interest as a matter of right. The Court of Appeals discussed these exceptions in *Buxton v. Buxton,* 363 Md. 634, 770 A.2d 152 (2001).

> **Pre-judgment interest is allowable as a matter of right when "the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date."** ... [T]he right to pre-judgment interest as of course arises under written contracts to pay money on a day certain, such as bills of exchange or promissory notes, in actions on bonds or under contracts providing for the payment of interest, in cases where the money claimed has actually been used by the other party, and in sums payable under leases as rent. Pre-judgment interest has been held a matter of right as well in conversion cases where the value of the chattel converted is readily ascertainable.... On the other hand, in tort cases where the recovery is for bodily harm, emotional distress, or similar intangible elements of damage not easily susceptible of precise measurement, the award itself is presumed to be comprehensive, and pre-judgment interest is not allowed.... Between these poles of allowance as of right and absolute non-allowance is a broad category of contract cases in which the allowance of pre-judgment interest is within the discretion of the trier of fact.

*Id.* at 656–57, 770 A.2d 152 (citations omitted and emphasis added).

Recently, in *Gordon v. Posner,* 142 Md.App. 399, 438, 790 A.2d 675, *cert. denied,* 369 Md. 180, 798 A.2d 552 (2002), we narrowly interpreted the exception for sums "certain, definite

and liquidated." *Gordon* considered which of three adult children was obligated to pay federal and state estate taxes attributable to their mother's estate. The amount of tax liability was undisputed. We concluded that, "even when the amount is certain, a legitimate dispute as to the obligation to pay deprives the claimant of an absolute right to interest, and places the case into that category where interest is discretionary with the fact-finder." *Id.* at 438, 790 A.2d 675.

Applying *Gordon,* we hold that the question of whether to award prejudgment interest in this case was discretionary, because "a legitimate dispute as to the obligation to pay" existed until the jury found that the Ver Bryckes made a conditional gift to Lisa and John. Although the $160,000 amount that was secured by the deed of trust transfer was known, there was a dispute as to whether the gift was unconditional. That finding also would govern the outcome of the claims based on promissory estoppel and unjust enrichment. We hold that the trial court's denial of the Ver Bryckes' request for prejudgment interest was a proper exercise of its discretion.

**JUDGMENT REVERSED AS TO $40,000; JUDGMENT AFFIRMED AS TO $160,000. COSTS TO BE PAID ONE–HALF BY APPELLEES/CROSS–APPELLANTS, AND ONE–HALF BY APPELLANT/CROSS–APPELLEE.**